UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL BARAJAS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF ROHNERT PARK, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-05157-MEJ<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT AND SUA SPONTE CERTIFYING ISSUES FOR APPEAL**<br><br>Re: Dkt. No. 71 |

## INTRODUCTION

Pending before the Court is Defendant City of Rohnert Park's (the "City" or "Defendant") follow-up Motion for Summary Judgment addressing the City's potential *Monell*[1] liability under 42 U.S.C. § 1983 regarding the "*Randolph* rule" stemming from the United States Supreme Court's decision in *Georgia v. Randolph*, 547 U.S. 103 (2006). Def.'s Mot., Dkt. No. 71; *see also* Defs.' Br. in Supp. of City's Mot. ("City Br."), Dkt. No. 76.[2] The Court has carefully considered the parties' positions, reviewed the record and supporting documents in this case, and explored the relevant legal authorities. Ultimately, the Court **DENIES** the City's Motion; however, as explained below, the Court also sua sponte certifies two issues for interlocutory appeal under 28 U.S.C. § 1292(b): (1) whether the *Randolph* rule applies to this case, and (2) whether reasonable suspicion was required for the search in this case.

---

[1] To hold a municipal entity liable for a constitutional violation, a plaintiff must show that an official's action that caused the plaintiff's injury was pursuant "to official municipal policy of some nature[.]" *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). In other words, a local government may only be liable under § 1983 for its own action or inaction, not that of its employees. *Id.* at 694; *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

[2] As indicated, the City filed its Motion separately from its Points and Authorities. In the future, all parties must comply with Civil Local Rule 7-2(b), which requires a motion, notice of motion, and the related points and authorities be filed in "one document." *See* Civ. L.R. 7-2(b).

**BACKGROUND**

On February 5, 2016, the Court issued an Order on the parties' cross motions for summary judgment. Order re: Mots. for Summ. J. ("MSJ Order"), Dkt. No. 59; *see Barajas v. City of Rohnert Park*, ___ F. Supp. 3d ___, 2016 WL 454068 (N.D. Cal. Feb. 5, 2016). For purposes of this Order, the Court incorporates the statement of facts from the MSJ Order (*see* "Background" section at pages 1-4). Simply put, this case is based on allegations that police officers conducted a suspicionless search of a probationer's home over the objection of the probationer's co-residents, Plaintiffs Elva and Raul Barajas ("Plaintiffs")[3], despite the fact that the probationer himself had agreed to "warrantless" searches as a condition of his probation. The probationer is not a plaintiff in this case; only the co-residents bring suit.

In the MSJ Order, the Court found, among other things, that the Supreme Court's decision in *Georgia v. Randolph*, 547 U.S. 103 (2006), applies in the context of probation searches such as the one in this case. *See* MSJ Order at 10-13; 18-22. In *Randolph*, the Supreme Court held that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." 547 U.S. at 122-23. Put another way, the Supreme Court explained that "a warrantless search of a shared dwelling . . . over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120 (footnote omitted) (holding search invalid under Fourth Amendment when a physically-present occupant expressly objected to a search, notwithstanding the consent of a fellow occupant). As the *Randolph* Court explained, "in the balancing of competing individual and governmental interests entailed by the bar to unreasonable searches, . . . the cooperative occupant's invitation adds nothing to the government's side to counter the force of an objecting individual's claim to security against the government's intrusion into his dwelling place." *Id.* at 114-15 (citation omitted). In comparing the individual's interest in protecting the sanctity of his home, the Court found "[d]isputed permission is [] no match for this central value of the Fourth Amendment, and the State's other countervailing claims do not add up to outweigh it." *Id.* at 115. Consequently, this Court

---

[3] Plaintiffs are the probationer's parents.

2

examined the "totality of the circumstances" of the search in this case, weighed the competing interests of the City and Plaintiffs, and found the *Randolph* rule "applied to the facts in this case as the government's limited interests in conducting this search do not outweigh Plaintiffs' continued interest in the privacy in their home." MSJ Order at 19, 22.

Ultimately, the Court found that "[b]ased on th[e] record, a reasonable jury could find that Plaintiffs can prove Defendants violated their Fourth Amendment rights by entering their home and conducting a warrantless and suspicionless search of their joint premises over their express objections." *Id.* at 22. In doing so, the Court noted the record was unclear about precisely when police officers entered Plaintiffs' home as compared to when Plaintiffs objected to the officers' request to enter. *Id.* at 17-18. If the officers entered the home over Plaintiffs' objections, the Court found a rational jury could conclude the search was unreasonable under *Randolph*; however, if the officers entered the home before Plaintiffs objected, the Court found the officers' lack of reasonable suspicion alone did not make the search unconstitutional under *United States v. King*, 736 F.3d 805 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1492 (2014). MSJ Order at 18-28. According to the majority in *King*, "[u]nder California law, Defendant's agreement to the warrantless search condition as part of his state-court probation was an agreement to be subject to suspicionless searches." 736 F.3d at 806 n.3. Thus, while Plaintiffs had sought summary judgment on the ground that lack of reasonable suspicion made the search unconstitutional, the Court found the probationer's warrantless search condition meant he consented to suspicionless searches; as such, "if a jury found Officer Tatum entered the home before Plaintiffs objected, [the probationer]'s consent justified a suspicionless search of the home he shared with them." MSJ Order at 24-28 (but also noting, "[t]his finding does not necessarily mean the search was automatically reasonable simply because of [the probationer]'s consent; it means only that the Court cannot grant Plaintiffs summary judgment on the ground that reasonable suspicion was categorically required to perform this search."). In sum, the Court found "a reasonable jury could conclude it was unreasonable for the officers to enter Plaintiffs' home over their objections without a warrant and without reasonable suspicion." *Id.* at 32.

Nonetheless, the Court granted the individual Defendant officers qualified immunity for

3

United States District Court
Northern District of California

1    their decision to conduct a probation search of Plaintiffs' home over their objections on the ground

2    that Plaintiffs' rights under these circumstances were not clearly established.  *Id.* at 22-24 (citing

3    *Smith v. City of Santa Clara*, 2013 WL 164191, at *8 (N.D. Cal. Jan. 15, 2013) (declining "to

4    resolve the underlying constitutional question of whether the Fourth Amendment permits a

5    probation search where another resident of the house is present and objects" but concluding the

6    officers in that case were entitled to qualified immunity because it "would be reasonable to believe

7    that a rule that applies to searches generally does not apply the same way to probation searches"

8    and it was "not clearly established that Plaintiff's refusal could or should trump the consent

9    included as a condition of [the probationer's] probation."")).[4]

10   Regarding the City's *Monell* liability, however, the Court found that "as to the potential

11   violation of the *Randolph* rule, . . . the parties have not sufficiently addressed *Monell* liability for

12   this claim."  *Id.* at 36.[5]  As the Court specifically noted, "[b]oth parties focused more on whether

13   *Randolph* actually applied in this case but did not devote much argument or evidence as to

14   whether the City's action or inaction was the moving force behind the potential violation of the

15   *Randolph* rule."  *Id.*  Finding *Randolph* applied, the Court denied the City's Motion for Summary

16   Judgment on the *Monell* claim, but did so without prejudice to give the parties an opportunity to

17   file further summary judgment briefing "concerning whether a City policy or custom was the

18   moving force behind the potential *Randolph* rule violation."  *Id.* at 37.  The Court would have

19   simply granted the City summary judgment if it had found *Randolph* inapplicable, not given the

20   City a further opportunity to file a follow-up motion about its policies and practices.

21   The City has now filed that follow-up Motion, arguing that "[j]udgment of dismissal must

22   be granted to the City because Plaintiff cannot prove under any set of facts that the City was the

23   'moving force behind the potential *Randolph* rule violation.'"  City Br. at 1; *see id.* ("Plaintiff

---

[4] The City contends the Court did not cite the *Smith* case in its MSJ Order.  City Br. at 12 ("This Court did not cite the case of *Smith v. City of Santa Clara*, No.5:11-cv-03999, 2013 WL 164191 (N.D.CA. 2013).").  As indicated above, this contention is erroneous.  And even to the extent the City meant the Court did not cite *Smith* in analyzing *Monell* liability, this is inconsequential as the MSJ Order expressly did not complete its analysis on municipal liability related to the *Randolph* rule, reserving the issue of the nature of City's policies and practices for the future.

[5] The Court did not find the Officers actually violated the *Randolph* rule at that point because it was unclear whether the facts underlying such a claim were undisputed.  *See* MSJ Order 17-18.

1  [sic] cannot prove that the Municipality 'caused' injury."); *id.* at 5 ("For a *Monell* claim to be
2  actionable, the municipality must cause (moving force) the constitutional deprivation both in law
3  and in fact."); *see also* Fed. R. Civ. P. 56(a) (summary judgment is proper where there is "no
4  genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of
5  law.").

6        Plaintiffs respond with testimony from the City's Rule 30(b)(6) witness, Chief of Police
7  Brian Masterson, who testified that the search of Plaintiffs' home "followed our agency policy"
8  and that the officers were "supposed to go in" even if Plaintiffs objected to the search. Blythe
9  Decl., Ex. A ("30(b)(6) Dep.") at 11:55, 26:14-24, Dkt. No. 77-2. They contend this, along with
10 other evidence, raises genuine questions of material fact as to whether the City's policies or
11 customs caused the potential constitutional violations in this case. *See* Pls.' Opp'n, Dkt. No. 77;
12 *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (the party opposing summary
13 judgment can defeat the motion by "sett[ing] forth specific facts showing there is a genuine issue
14 for trial" (internal quotations omitted)).

## DISCUSSION

16       At first blush, the City's argument—that Plaintiffs cannot prove the City "caused" the
17 potential constitutional violations in this case related to the *Randolph* rule—seems uncomplicated.
18 But the City's causation assertions are not so simple. In addition to challenging the traditional
19 bases for application of municipal liability under § 1983, the City also contends Plaintiffs cannot
20 prove such causation "because the *Randolph* rule as applied to probationary searches 'was not
21 clearly established' and for all intents and purposes didn't exist until February 5, 2016." City Br.
22 at 1. The City asserts it is entitled to summary judgment because it "could not 'cause' a
23 constitutional violation for acts that were not unconstitutional at the time the officers conducted
24 the search." *Id.* at 12; *see also* City Reply at 9, Dkt. No. 78 (arguing "municipal immunity . . . . is
25 warranted on this record" as "[r]easonable minds differ on the application of *Randolph* to the
26 instant probation search" and "[a] definitive and final answer is a long way away."). Plaintiffs
27 disagree, arguing "it does not matter whether it was clearly established in November 2014 that
28 *Randolph* applies to probation searches. Municipalities are not given immunity for

1   unconstitutional policies and practices, even where implemented in good faith." Pls.' Opp'n at 12
2   (citations and footnote omitted).

**A.   "Municipal Immunity"**

As an initial matter, the Court rejects the City's "immunity" argument for municipal liability. First, the Court notes the City has cited no case law in support of its argument. Second, while the City is in essence seeking qualified immunity for itself, "[a] municipality is not entitled to assert the defense of qualified immunity." *Huskey v. City of San Jose*, 204 F.3d 893, 902 (9th Cir. 2000) (citing *Owen v. City of Indep., Mo.*, 445 U.S. 622, 638 (1980)). Even where a court grants qualified immunity to individuals acting in their personal capacity on the basis that the law was not clearly established at the time of their acts, such immunity does not extend to local municipalities under § 1983. *See Owen*, 445 U.S. at 638 (finding that there is no qualified immunity for local government); *Garcia v. Cty. of Riverside*, 817 F.3d 635, 639 (9th Cir. 2016) (sheriff could "only assert qualified immunity in his individual capacity, not in his official capacity." (citing *Eng v. Cooley*, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009); *Owen*, 445 U.S. at 638)). Qualified immunity is unavailable even where a municipality relies on the good faith of its officers or on state law. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) ("a municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983" (quotation omitted)); *Humphries v. Cty. of Los Angeles*, 554 F.3d 1170, 1202 (9th Cir. 2009), *as amended* (Jan. 30, 2009) ("the County is not entitled to qualified immunity for acting in good faith reliance on state law"), *rev'd and remanded on other grounds sub nom. Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29 (2010); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 474, 485 (1986) (municipality was liable where prosecutor authorized warrantless entry even though entry was lawful under governing law at the time).

*Owen* clarifies the basis for this rule. The Supreme Court's "rejection of a construction of § 1983 that would accord municipalities a qualified immunity for their good-faith constitutional violations [was] compelled both by the legislative purpose in enacting the statute and by considerations of public policy." *Owen*, 445 U.S. at 650. Specifically, the Court noted that

> [t]he absence of any damages remedy for violations of all but the

> most 'clearly established' constitutional rights, . . . could also have the deleterious effect of freezing constitutional law in its current state of development, for without a meaningful remedy aggrieved individuals will have little incentive to seek vindication of those constitutional deprivations that have not previously been clearly defined.

*Id.* at 682 n.33 (citation omitted). Moreover, the Court found "[t]he knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights." *Id.* at 651-52. Indeed, "the threat that damages might be levied against the city may encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights[.]" *Id.* at 652.[6]

In view of the Supreme Court's analysis on this matter, the Court cannot find a basis to grant the City summary judgment on its theory that uncertainty about the law at the time of the alleged constitutional violation immunizes municipalities from liability under § 1983. Nor would the Court wish to do so. The *Owen* Court was appropriately concerned with the development of constitutional law, of particular importance with evolving technologies, rules, and regulations. The City's theory risks bringing this development to a halt. Consequently, the Court will not grant summary judgment in favor of the City on such grounds. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993) ("municipalities do not enjoy

---

[6] The Court further stated:

> We believe that today's decision, together with prior precedents in this area, properly allocates these costs among the three principals in the scenario of the § 1983 cause of action: the victim of the constitutional deprivation; the officer whose conduct caused the injury; and the public, as represented by the municipal entity. The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury. The offending official, so long as he conducts himself in good faith, may go about his business secure in the knowledge that a qualified immunity will protect him from personal liability for damages that are more appropriately chargeable to the populace as a whole. And the public will be forced to bear only the costs of injury inflicted by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."

*Owen*, 445 U.S. at 657-58 (quoting *Monell*, 436 U.S. at 694).

immunity from suit—either absolute or qualified—under § 1983").

## B. Certification Order for Interlocutory Appeal

In the initial MSJ Order, the Court found the parties had not adequately addressed the issue of *Monell* liability as to the *Randolph* rule and consequently gave the parties a further opportunity to address this issue. The parties presented evidence on that issue, which the Court has carefully reviewed. It is now evident to the Court that, under the present circumstances, it cannot resolve the question of the *Randolph* rule's applicability to this case at the summary judgment stage. Plaintiffs have demonstrated genuine questions exist as to whether the City has a policy or custom that caused the potential constitutional violation in this case.[7] *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) ("[T]o avoid summary judgment, a plaintiff need only show that there is a question of fact regarding whether there is a city custom or policy that caused a constitutional deprivation."); *see also Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992) (holding that city's policy need not be unconstitutional per se, but need only cause a constitutional violation). Given that municipal liability may be available,[8] the Court is precluded from granting summary judgment at this point.

The Court is now, however, faced with the prospect of proceeding to trial while a dispute exists as to whether there can even be a constitutional violation in this case based on the *Randolph* rule. This is not a simple factual question but a legal one about the bounds of federal law. In the MSJ Order, the Court attempted to faithfully follow the dictates of *Randolph* as binding precedent and apply those principles to the circumstances of this case. But in light of the City's apparent resistance to these findings and the prospect of trying this case before a jury on this largely novel point of law, the Court must consider the best and most efficient way for the case to proceed. *See* Fed. R. Civ. P. 1 (the court and the parties should seek to "secure the just, speedy, and inexpensive

---

[7] Liability based on a municipal policy may be satisfied one of three ways: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of "deliberate indifference" to constitutional rights; or (3) when a local government official with final policymaking authority ratifies a subordinate's unconstitutional conduct. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing Supreme Court authorities).

[8] The Court declines to make additional findings at this point, because, as discussed below, the issue of whether there was a constitutional violation under the *Randolph* rule is still in dispute.

determination of every action and proceeding").

"A district court, *sua sponte*, may certify an order for interlocutory appellate review where the order involves 1) a controlling question of law; 2) as to which there is substantial ground for difference of opinion; and 3) where an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1323, 1337 (S.D. Cal. 2014), *leave to appeal granted* (Jan. 14, 2015) (citing 28 U.S.C. § 1292(b); *United States v. Stanley,* 483 U.S. 669, 673 (1987); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1196 (9th Cir. 2007) (noting that district court sua sponte certified its order for interlocutory appeal)). A district court's decision whether to certify an order for interlocutory appeal should be used "in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation." *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966).

This is one such extraordinary case. Accordingly, the Court finds the following issue should be certified for appeal: whether the *Randolph* rule applies to the probation search conducted in this case, as found by the Court's MSJ Order. The application of *Randolph* here presents a controlling question of law which will materially impact this case's outcome. It is also evident the City disagrees with the Court's Order on the *Randolph* rule, and although this Court's MSJ Order aligns with other trial court decisions that *Randolph* may be applied in the context of probation searches, there are still meaningful grounds for a difference of opinion on this issue. Moreover, "[i]f the appellate court reverses the Court's decision on . . . [this] issue[], it would materially affect the outcome of the case and possibly advance the ultimate termination of the litigation." *Beaver*, 29 F. Supp. 3d at 1338; *see* 28 U.S.C. § 1292(b). While the Court has considered a variety of alternatives other than an interlocutory appeal, at this point, the Court believes such an appeal is the best means to resolve this matter and avoid more expensive and protracted litigation. Accordingly, the Court finds this issue appropriate for interlocutory appeal.

Finally, there is also a lingering question about whether reasonable suspicion was required for the search in this case, where the probationer only agreed to a "warrantless" search condition. *See United States v. Gomez*, 2014 WL 1089288, at *14 (N.D. Cal. Mar. 14, 2014) (finding reasonable suspicion was required to conduct search where probationer agreed to "warrantless"

9

search condition). Judge Marsha Berzon of the Ninth Circuit dissented in *King* on the ground that "King's search condition did not plainly, clearly, and unambiguously provide notice that he was subject to searches without even reasonable suspicion." *See* 736 F.3d at 814 (Berzon, J., dissenting). The dissent disavowed the "majority's decision [which] . . . permit[s] such searches without *any* quantum of suspicion, as long as the probationer has assented to a warrantless search condition, no matter how ambiguously worded." *Id.* at 816 (emphasis in original). Additionally, one California Court of Appeal judge, invoking Judge Berzon's dissent, noted that while a parolee's search condition is set by statute in California, conditions of probation may be imposed only "so long as they are 'fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer.'" *People v. Douglas*, 240 Cal. App. 4th 855, 857 (2015), *as modified on denial of reh'g* (Oct. 19, 2015), *review filed* (Nov. 10, 2015) (quoting Cal. Penal Code § 1203.1(j)). "The courts therefore attempt to individualize the terms and conditions of probation to fit the offender[,]" meaning "probation search clauses are not worded uniformly." *Id.* (citing *King*, 736 F.3d at 811 n.1 (Berzon, J., dissenting)); *see also People v. Romeo*, 240 Cal. App. 4th 931, 951 (2015) (Streeter, J.) ("[J]udges may limit the scope of the defendant's consent to searches for particular contraband, such as drugs or stolen property, or place spatial limits on where searches may take place. Some judges have 'standard' probation terms for particular crimes and particular circumstances . . . , but practices vary by county all over the state.").

In light of the foregoing, the Court also finds the following issue should be certified for interlocutory appeal: whether reasonable suspicion was required to perform the search in this case. This issue presents a controlling issue of law where there is substantial difference of opinion involving both state and federal law, as indicated above. Moreover, resolution of this issue will materially impact this case, both in terms of potential liability as well as the parties' and Court's resources, and should be resolved in advance of trial to avoid expensive litigation and any unnecessary delays. As such, the Court finds this issue appropriate for interlocutory appeal.

**CONCLUSION**

Based on the analysis above, the Court hereby **DENIES** the City's Motion for Summary **WITHOUT PREJUDICE** and **CERTIFIES** two issues for interlocutory appeal under 28 U.S.C. § 1292(b):  (1) whether the *Randolph* rule applies to the probation search conducted in this case, and (2) whether reasonable suspicion was required to conduct the search in this case.  Either party may apply to the Court of Appeals for the Ninth Circuit to accept certification.  Within thirty days of the date of this Order, the parties shall confer and submit to the Court a proposal for whether this action should be stayed.  *See Beaver*, 29 F. Supp. 3d at 1338 (Section 1292(b) provides for a stay pending appeal "if it will promote economy of time and effort.")  If the Ninth Circuit declines to accept certification, the parties shall so inform the Court promptly.

**IT IS SO ORDERED.**

Dated: **August 10, 2016**

_____
MARIA-ELENA JAMES
United States Magistrate Judge