UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL BARAJAS, et al., <br>     Plaintiffs, <br>   v. <br> CITY OF RHONERT PARK, et al., <br>     Defendants. | Case No. 14-cv-05157-MEJ <br><br> **ORDER RE: RENEWED CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 111, 112 |

Pending before the Court are the parties' renewed cross-motions for summary judgment. *See* City Mot., Dkt. No. 111; Barajas Mot., Dkt. No. 112. The Court finds the matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78; Civ. L.R. 7-1(b). For the reasons stated below, the Court maintains its prior conclusions.

**BACKGROUND**

This case is based on allegations that police officers conducted a suspicionless search of probationer Edgar Perez's residence in November 2014 over the objection of his parents and co-residents, Plaintiffs Elva and Raul Barajas. Plaintiffs assert a claim for violation of the Fourth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, based on the illegal search of their residence. *See* Compl.

The Court issued two prior orders on the parties' original cross-motions for summary judgment. *See Barajas v. City of Rohnert Park*, 159 F. Supp. 3d 1016, 1022 (2016) ("*Barajas I*"); *Barajas v. City of Rohnert Park*, 2016 WL 4208279 (N.D. Cal. Aug. 10, 2016) ("*Barajas II*").[1] It

---

[1] The factual background provided in those orders is incorporated here by reference. The parties filed new Separate Statements of Material Facts in connection with this renewed briefing. *See* Barajas Reply iso Sep. Stmt. ("Pls.' UMF"), Dkt. No. 117-1 (incorporating initial facts, City's response, and Barajas' reply thereto); Pl.'s Resp. to Defs.' Sep. Stmt. ("Defs.' UMF"), Dkt. No.

bears repeating that "it is not Perez's privacy interests that matter here—rather, it is the privacy interests of his [non-probationer] co-habitants that are of consequence to this case." *Barajas I*, 159 F. Supp. 3d at 1022. The Court summarizes its prior holdings here.

**A.   *Barajas I***

1.   Level of Suspicion Required

In its first order, the Court held *Georgia v. Randolph*, 547 U.S. 103 (2006), potentially applied, despite the existence of a probation search condition and where physically-present occupants not subject to a search condition objected to the search:

> [T]he Court finds the *Randolph* rule is properly applied to the facts in this case as the government's limited interests in conducting this search do not outweigh Plaintiffs' continued interest in the privacy in their home. . . . A reasonable jury could find that Plaintiffs can prove Defendants violated their Fourth Amendment rights by entering their home and conducting a warrantless and suspicionless search of their joint premises over their express objections. Consequently, in light of *Randolph*, the Court cannot grant Defendants' summary judgment motion on the ground that their search was constitutional.

*Barajas I*, 159 F. Supp. 3d at 1033. The Court found that if Officer Tatum entered Plaintiffs' home before they objected, the probationer's consent justified a suspicionless search of the home he shared with his parents. *Id.* at 1037. Thus, the Court could not grant summary judgment to Plaintiffs on the ground that reasonable suspicion was categorically required to perform this search. *Id.* Surveying the existing authorities, the Court also found reasonable officers at the time of the search "could have concluded the issue of whether objecting co-residents could stop a probation search was not yet resolved" and thus found the Defendant officers were entitled to qualified immunity on the issue of conducting the probation search over Plaintiffs' objections. *Id.* at 1034.

2.   Reasonableness of Method of Entry

The Court could not grant summary judgment to Defendants because a reasonable jury could conclude it was unreasonable for Officer Tatum to enter the home through the back door while officers at the front door were explaining who they were. *Id.* at 1037-38. The Court also

---

112-4. The Court will address any new facts discussed by the parties in this set of briefs.

2

could not grant summary judgment to Plaintiffs because they cited no authority supporting their contention that Officer Tatum's actions violated the Fourth Amendment as a matter of law, and "tacitly ask[ed] the Court to assume the role of factfinder and determine the reasonableness of Officer Tatum's conduct." *Id.* at 1038. The Court found that Officer Tatum was not entitled to qualified immunity because, under Plaintiffs' version of the facts, a reasonable officer would be on notice that his conduct was an unreasonable method of entry. *Id.* at 1038-39.

### 3. Motive for Search

The Court found a triable issue existed as to whether Defendants conducted the search for purposes of harassment rather than related to probation or other legitimate law enforcement purposes. *Id.* at 1040. If a jury found this to be the case, Defendants would not be entitled to qualified immunity because a reasonable officer in 2014 would have understood harassment violated Plaintiffs' rights to be free from unreasonable searches. *Id.*

### 4. *Monell* Liability

The Court found Plaintiffs had not created a triable issue of fact that a City policy or custom allowing officers to harass citizens through searching their homes was the moving force behind the officers' potential decision to search the home to harass, and granted summary judgment to Defendants on this issue. *Id.* at 1042. The Court found Plaintiffs had created a triable issue of fact that the City trained officers to enter probationers' homes in the manner at issue in this case, and that it was Defendants' custom to do so. *Id.* at 1043. It therefore denied summary judgment to Defendants on this issue. *Id.* The Court also denied, without prejudice, summary judgment to the City on the issue that a City policy or custom was the moving force behind the potential *Randolph* rule violation. *Id.* ("Both parties focused more on whether *Randolph* actually applied in this case but did not devote much argument or evidence as to whether the City's action or inaction was the moving force behind the potential violation of the *Randolph* rule.").

**B.** *Barajas II*

The City renewed the motion for summary judgment on the limited issue of its *Monell* liability for any potential violation of the *Randolph* rule. *See Barajas II*, 2016 WL 4208279, at *2-4. The Court again could not "find a basis to grant the City summary judgment on its theory

3

that uncertainty about the law at the time of the alleged constitutional violation immunize[d] municipalities from liability under § 1983." *Id.* at *4. The Court also found Plaintiffs demonstrated a triable issue of fact existed as to whether the City had a policy or custom that caused the potential *Randolph* rule violation, and thus denied summary judgment to the City on this issue as well. *Id.*

The Court certified for interlocutory appeal two issues: (1) whether the *Randolph* rule applies to the probation search conducted in this case, and (2) whether reasonable suspicion was required to conduct the search in this case. *See Barajas II*, 2016 WL 4208279 at *6. The Ninth Circuit denied the parties' petitions for review. *See* Status Report, Ex. A, Dkt. No. 92.

## C. Order to File Renewed Cross-Motions

The Court ordered the parties to file renewed cross-motions to aid the Court in determining whether it should exercise its inherent authority to reconsider its prior interlocutory orders regarding the two issues previously certified for appeal. *See* Briefing Order, Dkt. No. 108. The parties filed the instant cross-motions addressing these two issues, as well as other parts of the Court's prior decisions not certified for appeal. The Court only analyzes the issues on which it ordered further briefing. This Order does not alter the Court's previous findings in *Barajas I* and *Barajas II* regarding the reasonableness of entry, the motive for the search, or *Monell* liability.

# DISCUSSION[2]

The Court incorporates by reference its earlier analysis on these topics, and only discusses the parties' new arguments. Ultimately, the Court maintains its prior conclusions for the reasons set forth below.

## A. Application of the *Randolph* Rule

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that

---

[2] Defendants ask the Court to take judicial notice of all prior law and motion briefing in this case. *See* RJN, Dkt. No. 100. Plaintiffs object to this request as "extremely overbroad, lack[ing] any legal justification, and . . . completely improper." Obj. to RJN, Dkt. No. 112-2. The request is denied as moot, as Defendants do not identify any specific adjudicative facts of relevance to the Court's conclusions here.

4

permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 170 (1974); *see also Fernandez v. California*, 134 S. Ct. 1126, 1129 (2014) ("[P]olice officers may search [or enter] jointly occupied premises if one of the occupants consents."); *People v. Robles*, 23 Cal. 4th 789, 795-96 (2000) ("[I]f persons live with a probationer, shared areas of their residence may be searched based on the probationer's advance consent."). Conversely, a "co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, [and] his invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." *Randolph*, 547 U.S. at 114; *id.* at 120 ("We therefore hold that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.").

In reaching its decision in *Randolph*, the Supreme Court invoked the "centuries-old principle of respect for the privacy of the home" and the "ancient adage that a man's house is his castle to the point that the poorest man may in his cottage bid defiance to all the forces of the Crown." 547 U.S. at 115 (internal citations, quotation marks, and modifications omitted). These principles led the Supreme Court to conclude that, in the balancing of competing individual and governmental interests, "the cooperative occupant's invitation adds nothing to the government's side to counter the force of an objecting individual's claim to security against the government's intrusion into his dwelling place." *Id.* "Disputed permission is thus no match of this central value of the Fourth Amendment, and the State's other countervailing claims do not add up to outweigh it." *Id.*

Defendants do not address the philosophical underpinnings of the decision, and argue instead that *Randolph* stands for the limited proposition that a party who possesses actual or apparent authority cannot authorize the police to search for evidence against another party who is physically present and objecting. City Mot. at 3. Defendants argue that this is a probation case, not a consent case, and that extending *Randolph* to probation searches would block strong

5

government interests. *Id.* at 4. Because Mr. Perez consented to a warrantless search provision as a condition of his probation, the Defendant officers could search all common areas of his residence without a warrant.[3] *Id.* at 3; *see also id.* at 5-6; City Reply at 9-12. The Court previously examined the authorities cited by the parties in support of their respective legal positions and concluded that courts have applied *Randolph* in the context of parole and probation searches, at least where the co-residents were not aware of the search condition of the probationer or parolee. *See Barajas I*, 159 F. Supp. 3d at 1025-26, 1030-33 (discussing *Thornton v. Lund*, 538 F. Supp. 2d 1053, 1058 (E.D. Wisc. 2008); *Sanders v. City of Bakersfield*, 2009 WL 734059, at *1-3 (E.D. Cal. Mar. 1, 2009); *Donald v. State*, 903 A.2d 315, 321 (Del. 2006); *Taylor v. Brontoli*, 2007 WL 1359713, at *1 n.4 (N.D.N.Y. May 8, 2007)). Because there is no evidence that Plaintiffs unambiguously knew about Mr. Perez's search condition, the Court continues to find they cannot be found as a matter of law to have acquiesced to a reduced expectation of privacy that would make the warrantless search reasonable as to them. Nothing Defendants have presented in connection with their renewed Motion convinces the Court to revisit that holding.

Defendants further argue that *Randolph* does not apply here because Plaintiffs "consented to the entry by withdrawing their objections." City Reply at 12-13. Plaintiffs disagree that they consented to the entry or that they withdrew their objections in a legally-meaningful way. Barajas Reply at 6 ("[M]ere submission to a claim of lawful authority is not consent as a matter of law."). Whether Plaintiffs consented to the search and/or voluntarily and validly withdrew their objections is also a disputed issue of fact. *See* Defs.' UMF 8, 10 (Defendants cite as undisputed Officer Rodriguez's deposition testimony that the officers "entered the home and searched the premises for Perez over the objection of Plaintiffs").

For these reasons, the Court continues to find that the *Randolph* rule applies to the search in this case and that triable issues of fact exist as to whether Plaintiffs objected; if Plaintiffs did object, at what point; and if so, whether they withdrew their objection to the search.

---

[3] It is undisputed the Defendant officers searched more than the common areas of the residence: they searched all the rooms, including the bedrooms, bathrooms, and closets. Pls.' UMF 34.

**B.      Whether Reasonable Suspicion was Required**

In *Barajas I*, existing case law led the Court to "the inexorable conclusion that when Edgar Perez agreed to his probation conditions allowing a 'warrantless search/seizure' of his residence, he also consented to suspicionless searches of his residence." *Barajas I*, 159 F. Supp. 3d at 1036 (relying on *United States v. King*, 736 F.3d 805, 815 (9th Cir. 2013) and *People v. Bravo*, 43 Cal. 3d 600, 610 (1987)); *cf. Barajas II*, 2016 WL 4208279, at *5 (certifying issue for appeal because "there is also a lingering question about whether reasonable suspicion was required for the search in this case, where the probationer only agreed to a 'warrantless' search condition."). This "does not necessarily mean the search was automatically reasonable simply because of Perez's consent; it means only that the Court cannot grant Plaintiffs summary judgment on the ground that reasonable suspicion was categorically required to perform this search." *Barajas I*, 159 F. Supp. 3d at 1036. If the search condition was not reasonable as to Mr. Perez, then regardless of whether *Randolph* applies here, a suspicionless search of the Barajas residence over Plaintiffs' objections would not be reasonable. For this reason, the Court revisits the level of suspicion the Defendant officers required to conduct the search of Plaintiffs' residence.

1.      Recent Ninth Circuit Decisions

Based on recent Ninth Circuit decisions, Plaintiffs argue the holding of *King* is limited to violent felonies, and does not apply to convictions for methamphetamine possession like Mr. Perez's. Barajas Mot. at 16-18 (citing *United States v. Lara*, 815 F.3d 605, 609 (9th Cir. 2016) and *United States v. Job*, 851 F.3d 889, 896-7 (9th Cir. 2017), *as amended*, -- F.3d --, 2017 WL 3588250 (9th Cir. Aug. 21, 2017)). They argue the Court should reject Defendants' invitation to consider uncharged conduct to conclude that *King* applies to Mr. Perez. *Id.* at 22-23. Defendants argue the Court should extend *King* to misdemeanors, and should leave it up to the sentencing State Court to decide Mr. Perez's conditions of probation. *See* City Mot. at 7-10. Defendants urge the Court to defer to the State Court's determination of what probation conditions are likely to make Mr. Perez successful. City Reply at 2-4.

2. <u>Analysis</u>

    i. *United States v. King*

In *King*, the Ninth Circuit "examine[d] the totality of circumstances to determine whether the suspicionless search of [a probationer-defendant's] residence was reasonable." 736 F.3d at 808. As a probationer, the defendant had a lower expectation of privacy than citizens not subject to criminal sanctions, and the probation search condition was a salient circumstance. *Id.* Together, and in light of the probationer's underlying conviction for willful infliction of corporal injury on a cohabitant, these factors led the Ninth Circuit to conclude the probationer's privacy expectation was "small." *Id.* Balancing this small expectation of privacy against the government's "substantial" interests in protecting the public from recidivism, discovering criminal activity, and ensuring the probationer's successful completion of probation, the court held the search was reasonable. *Id.* at 810. The Court held that a warrantless and "suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment." *Id.*

Since the undersigned decided *Barajas I* and *Barajas II*, the Ninth Circuit has repeatedly reiterated that its decision in *King* is limited "to individuals on probation for violent felonies" and does not apply to an individual "on probation for a nonviolent drug offense." *Job*, 2017 WL 3588250, at *4 (citing *Lara*, 815 F.3d at 609-10 ("We expressly limited our holding [in *King*] to violent felons, writing, 'We need not decide whether the Fourth Amendment permits suspicionless searches of probationers who have not accepted a suspicionless-search condition, or of lower level offenders who have accepted a suspicionless-search condition, because those cases are not before us.'")).

The Ninth Circuit also has found that convictions for possession for sale and transportation of methamphetamine are non-violent drug crimes. *Job*, 2017 WL 3588250, at *4 n.2 (citing *Lara*, 815 F.3d at 610). Mr. Perez was on probation for pleas relating to resisting arrest, simple possession, and possession of a controlled substance. *See* Defs.' UMF 12-15. Under Ninth Circuit precedent, Mr. Perez was on probation for nonviolent drug offenses, and *King* therefore

8

does not apply to him.[4]

### ii. *United States v. Job*

*Job* does not hold that a search condition cannot justify a suspicionless search of a non-violent probationer's home.[5] The central issue in *Job* was whether police officers could *retroactively* rely on a search waiver when they were unaware of the waiver before the search; the Ninth Circuit reiterated its long-standing principle that they could not: "A Fourth Amendment search waiver cannot provide a justification for a search of a probationer where the officers were unaware of the waiver before they undertook the search." *Job*, 2017 WL 3588250, at *4. Here, the Defendant officers who searched the Barajas residence were very much aware of the search waiver, relied upon it when attempting to obtain Plaintiffs' acquiescence to the search, and repeatedly informed Mr. Barajas they did not need a warrant because Mr. Perez was on probation. Pls.' UMF 26-27. Defendants are not retroactively relying on the search waiver; *Job* is therefore inapplicable on this point.

### iii. *United States v. Lara*

Probationers have a lower reasonable expectation of privacy than someone who has completed probation or has never been convicted of a crime, but their privacy interest is "still substantial." *Lara*, 815 F.3d at 610 (citing *United States v. Knights*, 534 U.S. 112, 120 (2001)). Lara moved to suppress evidence on the ground it had been found as a result of illegal searches of his cellphone. *Id.* at 608. The district court denied the motion and Lara appealed. On appeal, the government argued that Lara consented to the cellphone search as a condition of probation, thereby waiving his Fourth Amendment rights; alternatively, even if Lara did not waive his Fourth Amendment rights, the search was reasonable and therefore lawful. *Id.* at 609. The Ninth Circuit rejected these arguments. First, the Ninth Circuit declined to stop its analysis at whether Lara had accepted the cell phone search as a condition of probation, and instead continued to analyze

---

[4] The Court is not "assuming" that Perez's convictions were for non-violent offenses (Defs.' Opp'n at 4-5); the Court is following Ninth Circuit precedent holding so.

[5] The Ninth Circuit amended its *Job* opinion after the parties completed their briefing. Some of the passages Plaintiffs quote and rely upon are not included in the amended opinion.

9

whether the search condition that he accepted was reasonable. *Id.* His "acceptance of a search term in [his] probation agreement does not by itself render lawful an otherwise unconstitutional search" of his person or property. *Id.* The Ninth Circuit explained:

> In *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 261 (9th Cir. 1975) (en banc), we held that probationers do not entirely waive their Fourth Amendment rights by agreeing, as a condition of their probation, to "submit [their] person and property to search at any time upon request by a law enforcement officer." We explained that there is a limit on the price the government may exact in return for granting probation. *Id.* at 265. Specifically, "any search made pursuant to the condition included in the terms of probation must necessarily meet the Fourth Amendment's standard of reasonableness." *Id.*

*Lara*, 815 F.3d at 609. While a probationer's acceptance of a search condition is "one factor that bears upon the reasonableness of the search, . . . it is not in itself dispositive." *Id.* Second, in evaluating the reasonableness of the search, the Ninth Circuit balanced the degree to which the search intruded on an individual's privacy against the degree to which the search was needed to promote legitimate governmental interests. *Id.* at 610. One of the factors the court considered was that the search condition did not clearly and unambiguously apply to the cellphone. *Id.* at 610-12.

Defendants seek to limit *Lara* to situations where the search exceeds the scope of the search clause. *See* Defs.' Opp'n at 5-6. While *Lara* is certainly instructive in situations where the search exceeds the scope of the search clause, it is not limited to those situations. Instead, *Lara* establishes courts must consider many relevant factors in evaluating whether a search is reasonable, even when a search clause gives officers permission to perform suspicionless searches. 815 F.3d at 609 ("The issue, therefore, is not solely whether Lara accepted the cell phone search as a condition of his probation, but whether the search that he accepted was reasonable."). In short, the Court does not read *Lara* as narrowly as Defendants suggest.

Another court in this district explained that "*Lara* should not be read to alter the approach for deciding a case in which officers conduct a search that clearly falls within the scope of a search condition. The question in a case like that (assuming the officer does not execute the search in an unreasonable manner) is simply whether the search condition is valid." *United States v. Aviles*, 229 F. Supp. 3d 1039, 1044 (N.D. Cal. 2017) (denying motion to suppress evidence). To defeat a

10

motion to suppress, the Government must prove the search condition is valid; if it meets that burden, the motion to suppress should be denied unless the officers executed the search in an unreasonable manner. *Id.* The district court recognized that proving the validity of a suspicionless search condition "may not be easy." *Id.* To determine whether the search condition was valid, the district court conducted "the same kind of individualized inquiry" the sentencing judge would have conducted to impose conditions of probation, including reviewing "the facts involved in the crime, the defendant's criminal history, and any other facts or characteristics specific to the defendant." *Id.* at 1045-46. The probationer in *Aviles* was convicted of vandalism and had fourteen prior convictions, several of which involved weapons or violence; his privacy interest was diminished by his status as a probationer convicted of an act of violence, and who had been convicted for violent crimes in the past; he had a long criminal history and "performed abysmally" during a previous period of probation; several of his prior offenses involved the possession of drugs or weapons; and his gang ties made him more likely to reoffend. *Id.* at 1046. Based on these facts, the district court concluded the suspicionless-search condition of probation was valid. Because the search condition was valid, the search of the home was within the scope of the search condition, and there is no indication the search was conducted unreasonably, the district court found the warrantless and suspicionless search of the probationer's home was reasonable under the Fourth Amendment. *Id.*

Mr. Perez was convicted of possession of a controlled substance and resisting arrest. *See* Defs.' UMF 12-15. Under Ninth Circuit precedent, drug convictions for possession are non-violent offenses; the parties do not address whether resisting arrest in this instance could be or was considered a violent offense. Thus, unlike the probationers in *Knight*, *King*, and *Aviles*, it is not undisputed that Mr. Perez was convicted of a violent offense, or that he has a lengthy criminal history that includes violent crimes. *See* Pls.' UMF 21-22. Whether Mr. Perez had gang ties and was found in possession of methamphetamines twice in the six months prior to the search is disputed. Defs.' UMF 5. There is no evidence Mr. Perez was ever found with a weapon, much less convicted of a crime involving one. Based on these facts, the Court cannot conclude that, as a matter of law, the search provision to which Mr. Perez agreed was valid or the suspicionless

11

search over Plaintiffs' objections was reasonable. *See Lara*, 815 F.3d at 609-10 ("We need not decide whether the Fourth Amendment permits suspicionless searches of . . . lower level offenders who have accepted a suspicionless-search condition, because those cases are not before us.").

As it did earlier, the Court continues to find a reasonable jury could conclude it was unreasonable for the Defendant officers to enter the non-probationer, co-resident Plaintiffs' home over their objections without a warrant and without reasonable suspicion. *Barajas I*, 159 F. Supp. 3d at 1040. The Court also continues to find that reasonableness is a disputed matter to be resolved by the trier of fact.

## C. Qualified Immunity

In *Barajas I*, the Court concluded the Defendant officers were entitled to qualified immunity because it was not clearly established in 2014 that the *Randolph* rule applied to probation searches or that reasonable suspicion was required to search the Barajas dwelling in light of Mr. Perez's search condition. 159 F. Supp. 3d at 1033, 1037. Recent Ninth Circuit authority reinforces the validity of these conclusions. *See Sharp v. Cty. of Orange*, -- F.3d --, 2017 WL 4126947, at *14 (9th Cir. Sept. 19, 2017) (finding that police officers who, in 2013, entered a residence in reliance on a probationer's search waiver over his co-habitant's objections were entitled to qualified immunity).[6]

---

[6] The Ninth Circuit recognized the body of existing law on which the officers relied to justify the broad search of the probationer's residence

> admittedly poses some difficult legal questions. For instance, does acceptance of a probationary search condition constitute "consent" to search the home; i.e., a complete waiver of Fourth Amendment rights? Can the search condition diminish a co-occupant's reasonable expectation of privacy in his home or otherwise bind a co-occupant to the "consent" given by the probationer? Even if so, in this case, did [the co-occupant's] contemporaneous objection to the search revoke any "consent" that might have been attributed to her, or negate the possible diminution of her privacy expectation brought about by Sharp IV's search condition? Established law does not offer clear answers to these questions. Thus, we cannot say that the deputies' particular conduct here violated clearly established law.

*Sharp*, 2017 WL 4126947, at *14. This Court has struggled, and continues to struggle, with these questions.

**CONCLUSION**

For the reasons above, the Court maintains its earlier holdings that:

(1)  Genuine issues of material fact exist as to whether the suspicionless search of the Plaintiffs' residence was reasonable, including whether the search was conducted over the objections of the physically present Plaintiffs; whether Officer Tatum's method of entry was unreasonable; and whether the search was conducted to harass;

(2)  The Defendant officers are entitled to qualified immunity on the issue of conducting the probation search over Plaintiffs' objections and on the issue of conducting a suspicionless search based on Mr. Perez's condition of probation.[7]

The Court schedules a case management conference on November 2, 2017 at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 to address trial setting.

**IT IS SO ORDERED.**

Dated: October 17, 2017

MARIA-ELENA JAMES
United States Magistrate Judge

---

[7] The Court's prior rulings on the issues the Court did not order the parties to brief anew stand:
    (1)  the Defendant officers are not entitled to qualified immunity based on Plaintiffs' claims the search was conducted to harass;
    (2)  Officer Tatum is not entitled to qualified immunity on Plaintiffs' claims that his method of entry was reasonable;
    (3)  the City bears no municipal liability related to Plaintiffs' claims that a City policy or custom was the moving force behind the officers' potential decision to conduct the search to harass;
    (4)  triable issues of fact exist regarding whether a City policy or custom was the moving force behind Officer Tatum's potentially unreasonable method of entry or the possible Randolph Rule violation.
*Barajas I*, 159 F. Supp. 3d at 20-21; *Barajas II*, 2016 WL 4208279, at *3-4.