ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
CAITLIN SINCLAIRE BLYTHE (CA SBN 265024)
CBlythe@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000

Attorneys for Plaintiffs
RAUL BARAJAS
ELVA BARAJAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAUL BARAJAS and ELVA BARAJAS,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF ROHNERT PARK, a municipal corporation; and JACY TATUM, DAVID RODRIGUEZ and MATTHEW SNODGRASS, officers with the City of Rohnert Park Police Department,<br><br>    Defendants. | Case No. 3:14-cv-05157 SK<br><br>**PLAINTIFFS' SUPPLEMENTAL BENCH BRIEF REGARDING CALIFORNIA CONSTITUTIONAL CLAIMS**<br><br>Judge:   Hon. Sallie Kim<br>Dept.:   Courtroom C, 15th Floor<br>Trial Date:  October 23, 2018 |

In response to the Court's Order Requiring Supplemental Briefing on Jury Instructions, Plaintiffs submit this bench brief to address the claims arising under the California Constitution. Although the California Supreme Court has not decided whether a private plaintiff may recover damages under Article I, Sections 13 (unreasonable search) and 1 (privacy) of the California Constitution, persuasive authority has recognized that such a right exists, and Defendants have not argued otherwise. This Court should allow the jury to resolve both claims.

With respect to jury instructions themselves, Plaintiffs strongly believe that if the California Supreme Court were to consider the standard for whether a residential search of a

probationer is reasonable, it would adopt the balancing test performed by federal courts. To that end, as Plaintiffs previously have argued, the Court should give the same Particular Rights instruction for both the federal and state constitutional claims. Should the Court determine that it is necessary to instruct the jury separately on California law, Plaintiffs have included in this brief an alternate state law instruction regarding unreasonable searches.

Regarding the right to privacy claim, Plaintiffs' separate instruction accurately instructs the jury on the elements of a constitutional privacy claim. The government's competing interest is not an element of a constitutional privacy claim but rather an affirmative defense. As the California Supreme Court has explained, moreover, it is an affirmative defense that a defendant must *plead and prove*. While Defendants asserted no fewer than 22 affirmative defenses in their Answer to the Second Amended Complaint ("SAC"), Defendants never alleged that competing interests justify their invasion of Plaintiffs' privacy rights. Nor have they ever sought to instruct the jury on that issue. Thus, Defendants have waived any affirmative defense that competing government interests justify the intrusion into Plaintiffs' privacy and the Court should give Plaintiffs' proposed instruction.

**I.      THE COURT SHOULD ALLOW THE JURY TO RESOLVE PLAINTIFFS' CLAIM THAT DEFENDANTS VIOLATED THEIR RIGHT TO BE FREE FROM AN UNREASONABLE SEARCH UNDER THE CALIFORNIA CONSTITUTION**

**A.      Persuasive Authority Has Recognized A Right to Recover Damages Under Article I, Section 13 of the California Constitution**

As this Court recognized, the California Supreme Court has not definitively resolved whether a plaintiff can recover damages under Article I, Section 13 of the California Constitution, which prohibits unreasonable search and seizure. This Court accordingly must predict how the California Supreme Court would decide the issue. *Astaire v. Best Film & Video Corp.*, 116 F.3d 1297, 1300 (9th Cir. 1997). The California Supreme Court's analysis in other cases strongly suggests that if it were to decide the question today, it would hold that damages are available. Moreover, numerous federal courts to have considered the issue have concluded that a plaintiff can sue for damages stemming from an unreasonable search. This Court should do the same.

In *Katzberg v. Regents of University of California*, the California Supreme Court laid out a test for determining whether a constitutional tort permitting the recovery of damages exists under a particular constitutional section. 29 Cal. 4th 300, 317 (2002). First, courts look to whether there is evidence of an affirmative intent to create such a tort. *Id.* As the Court recognized, "with regard to most constitutional provisions, the words of the provision do not on their own manifest any such intent." *Id.* at 318. Accordingly, courts typically must look to historical context to determine whether such intent existed. *Id.* at 317-18. The Court specifically recognized that a damage remedy can be implied "based upon preexisting common-law duties and rights." *Id.* at 322. Only if no such intent can be found will a court proceed to a more open-ended analysis modeled on the United States Supreme Court case, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 91 S. Ct. 1999 (1971), which considers whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the significance of the constitutional provision, among other factors. *Katzberg,* 29 Cal. 4th at 317.

Numerous federal courts have located an affirmative intent to provide a damages remedy for unreasonable searches based on *Katzberg*, without reaching the *Bivens* factors. In *OSJ PEP Tennessee LLC v. Harris*, for example, Judge Pregerson in the Central District of California examined the availability of damages under Article I, Section 13 and readily concluded that damages are available under the *Katzberg* test. No. CV 14-03741 DDP (MANx), 2014 WL 4988070, at *6-7 (C.D. Cal. Oct. 7, 2014). Judge Pregerson first acknowledged that "the tort remedy for unlawful searches and seizures is an ancient one incorporated into American law from the English common law." *Id* at 6. As recognized in *Katzberg*, a damages remedy can be implied "based upon preexisting common-law duties and rights." 29 Cal. 4th at 322; *see also OSJ*, 2014 WL 4988070, at *6-7 (discussing *Katzberg* and concluding that the Supreme Court was "pointing to a general understanding that where a state constitution is adopted that preserves the common law, it is appropriate for courts to infer the existence of 'constitutional torts' based on historical tort remedies for the wrongs contemplated by specific constitutional provisions"). Indeed, although the *Katzberg* Court was not asked to decide whether a damage remedy was available

1  under Section 13, the Court discussed with favor cases from other jurisdictions that implied a
2  damages remedy for *unlawful search and seizure* based on the availability of damages at common
3  law. 29 Cal. 4th at 322. In other words, if the California Supreme Court *were* asked to decide
4  whether a damage remedy exists under Section 13, *Katzberg* gives a clear indication of what the
5  Court would do. It almost certainly would imply a damages remedy based on the availability of
6  damages at common law. To that end, because "the English common law, by longstanding
7  practice, provided a damages remedy for unlawful searches and seizures," Judge Pregerson
8  concluded that "it seems quite likely that the framers of the California Constitution expected and
9  intended that violations of § 13 would have had a common law tort remedy." *Id.* at 7.

10  Other decisions from federal district courts agree that the framers intended a common law
11  cause of action. *See, e.g.*, *Smith v. Cty. of Los Angeles*, No. CV 11-10666 DDP (PJWx), 2015
12  WL 1383539, at *7 (C.D. Cal. Mar. 25, 2015) ("[A]t least three cases in the Central District have
13  held that there is a constitutional tort cause of action for damages under § 13" and this "Court
14  continues to recognize that cause of action"); *Smith v. City of Riverside* at 20, No. 5:05cv-00512-
15  CBM-SGL, ECF No. 29 (C.D. Cal. May 16, 2006) ("[T]he California Supreme Court's implied
16  endorsement of a damages action for a violation of the prohibition against unlawful searches and
17  seizures in *Katzberg* leads the Court to believe that the California Supreme Court would permit
18  such an action.").

19  By contrast, courts that have not recognized a damages remedy under Section 13 have not
20  given due consideration to the availability of a damages remedy at common law and are not
21  faithful to the *Katzberg* test. *See, e.g.*, *Wigfall v. City & Cty. of San Francisco*, No. C 06-4968
22  VRW, 2007 WL 174434, at *4-5 (N.D. Cal. Jan. 22, 2007) (finding nothing conclusive in text of
23  Section 13 or a 1974 ballot measure that merely renumbered Article I, Section 13 expressly
24  contemplating damages remedy, but failing to consider historical availability of damages remedy
25  under common law).

26  Allowing Plaintiffs' claim to proceed to the jury serves an important practical purpose as
27  well. The availability of a damages remedy is almost certain to be the subject of an appeal. If the
28  Court takes the issue away from the jury and the appellate court disagrees, the parties will be

forced to re-try the claim. For purposes of the Court's determination of whether injunctive relief is available, the Court also can treat the jury's factual findings as advisory, which is another reason to instruct the jury on this claim.

### B. Plaintiffs' Proposed Jury Instruction

Plaintiffs strongly believe that if the California Supreme Court were to decide now what standard to apply to determine whether a probation search is reasonable, the Court would abandon the consent-based approach in favor of the balancing test performed by federal courts. Moreover, even under existing authority from the California Supreme Court, a probationer does not waive his or her right to object to a search performed in an unreasonable manner. *See People v. Bravo*, 43 Cal.3d 600, 607, 610 (1987) ("A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons" and probationer does not waive "his right to object to harassment or searches conducted in an unreasonable manner"). For that reason, the jury should be given the same "Particular Rights" instruction for the federal and state unreasonable search claim, which considers the totality of the circumstances (including the manner of the search). But if this Court concludes that it must separately instruct the jury on the California search claim given that California Supreme Court historically applied a consent-based approach, Plaintiffs submit the below instruction.

**PARTICULAR RIGHTS—CALIFORNIA CONSTITUTION PROHIBITION AGAINST UNREASONABLE SEARCHES AND SEIZURES – UNREASONABLE SEARCHES AND SEIZURES**

Plaintiffs allege that Defendants deprived them of their rights under the California Constitution when the officers searched Plaintiffs' home on November 4, 2014, which Plaintiffs allege was unreasonable.

Under the California Constitution, a person has the right to be free from an unreasonable search of his or her residence. In order to prove that Defendants deprived Plaintiffs of their rights under California law, Plaintiffs must prove the following by a preponderance of the evidence:

1. Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass searched Plaintiffs'

1 residence;

2     2. in conducting the search, Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass
3 acted intentionally; and

4     3. the search was unreasonable.

5     A person acts "intentionally" when the person acts with a conscious objective to engage in
6 particular conduct. Therefore, Plaintiffs must prove that Defendants intended to search the
7 Plaintiffs' residence.

8     Under California law, police officers normally need a search warrant to search a home
9 (personal residence). A person has a right to privacy is his or her own home. A search warrant is
10 one way that courts make sure that police officers have a legitimate reason to enter a home. A
11 judge or magistrate judge reviews an application for a search warrant and signs the search warrant
12 only if certain standards are met.

13     There are exceptions to the requirement for a search warrant.

14     For example, there may be "exigent circumstances," or emergencies that allow law
15 enforcement officers to enter a home.

16     Another exception pertains to consent. Police officers may search a personal residence
17 without a warrant if the person living in the house (the habitant) gives permission (consent) for
18 the search. Under California law, when a person is placed on probation (probationer) and agrees
19 that law enforcement officers can search his or her home without a warrant (search condition),
20 courts consider that to be consent to search the home without a warrant. Even where there is
21 consent to search based on the search condition, the probationer can object to harassing searches
22 or searches performed in an unreasonable manner. However, if there are two people living in the
23 personal residence and one gives consent but the other is physically present and objects, then
24 there is no consent to enter and search the home.

25     In determining whether the search was reasonable, you should consider the following
26 factors:

27     (a) Whether Edgar Perez was on probation with a search condition at the time of the
28 search and what the terms of the search condition were.

(b) Whether the Plaintiffs were on probation. Occupants of a home who are not on probation have a higher expectation of privacy than probationers.

(c) Whether Edgar Perez lived at Plaintiffs' residence and whether the officers had a reasonable belief that Edgar Perez lived at Plaintiffs' residence.

(d) Whether Plaintiffs knew about the search condition of Edgar Perez.

(e) Whether the Plaintiffs objected to the search. If you find that Plaintiffs let the officers inside because the officers claimed to have legal authority to enter or because an officer already was inside the home, then Plaintiffs did not consent to the search.

(f) Whether the police officers knocked and announced their entry and whether they gave sufficient time for the Plaintiffs to respond.

(g) Whether exigent circumstances existed at the time of the search.

(h) The scope of the search, including the areas the police officers searched. Where a residence is shared by an individual who is not on probation, officers can search common areas of the shared home if the search otherwise is reasonable. However, as to a particular area or item that is not clearly a common space, officers must have a reasonable suspicion that the area or item is owned, possessed or within the control of the probationer, in order for it to fall within the permissible bounds of a probation search.

(i) The manner of the search, including the level of force used (or not used).

(j) The manner in which the officers entered the home, including whether weapons were drawn.

(k) The length of time for the search.

(l) Detention of the Plaintiffs during the search. Law enforcement officers may constitutionally detain the occupants of a home during a parole or probation compliance search under reasonable circumstances. In determining whether a detention of persons during a probation search is reasonable, you should consider the nature of the articulable and individualized suspicion justifying the detention.

(m) Whether the purpose of the search was to harass the Plaintiffs. If you find that the purpose of the probation search was to harass, then the search was not reasonable.

## II. THE COURT SHOULD ALLOW THE JURY TO RESOLVE PLAINTIFFS' CLAIM THAT DEFENDANTS VIOLATED THEIR RIGHT TO PRIVACY UNDER THE CALIFORNIA CONSTITUTION

### A. Persuasive Authority Has Recognized A Right to Recover Damages Under Article I, Section 1 of the California Constitution

As is true of Article I, Section 13, the California Supreme Court has not resolved whether a plaintiff can recover damages under Article I, Section 1, which protects the right to privacy. State and federal courts have come out differently on whether a damages remedy is available, as opposed to only equitable relief. The better view, and the one Plaintiffs urge this Court to adopt, is that damages are available.

Numerous state and federal courts have recognized a right to recover damages under Article I, Section 1. *See, e.g.*, *Su v. Nat'l Aeronautics & Space Admin.*, No. 5:09-cv-02838-EJD, 2013 WL 1663608, at *10 (N.D. Cal. Apr. 17, 2013) (discussing *Katzberg* and concluding that "money damages are available under a FTCA claim based upon the California constitutional right of privacy"); *Meier v. United States*, No. C 05-04404 WHA, 2006 WL 3798160, at *2, *6, *9 (N.D. Cal. Dec. 22, 2006) (recognizing right to damages under FTCA based on violation of right to privacy under California Constitution); *Hansen v. Cal. Dep't of Corr.*, 920 F. Supp. 1480, 1484, 503-09 (N.D. Cal. 1996) (granting summary judgment for plaintiff asserting damages claim for violation of privacy right protected by California Constitution); *Operating Eng'rs Local 3 v. Johnson*, 110 Cal. App. 4th 180, 184 (2003) (affirming judgment awarding employee damages against her employer for invasion of constitutional right of privacy); *Payton v. City of Santa Clara*, 132 Cal. App. 3d 152, 154 (1982) (reversing demurrer of damage claim under Article I, Section 1 of California Constitution); *Porten v. Univ. of San Francisco*, 64 Cal. App. 3d 825, 829 (1976) (same).

By contrast, courts that have come out differently generally have relied on a California Court of Appeal decision, *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224 (1990). But *Clausing* did not conduct an analysis under *Katzberg* and did not actually decide that a damages remedy is unavailable. Rather, *Clausing* refused to permit a claim for both equitable relief and damages to proceed on the ground that the plaintiffs' theory depended on an argument

1    that government actors have an affirmative, mandatory duty to protect the privacy rights of
2    citizens. *Id.* at 1238. *Clausing* concluded they do not. *Id.*

3    Rather than an affirmative duty, *Clausing* held that Article I, Section 1 creates a
4    prohibition on *violating* privacy rights. *Id.* ("Although citizens have a private cause of action
5    against public entities for violation of the right to privacy, no case has ever held that California
6    Constitution, article I, section 1, imposes a *mandatory duty* on public entities to protect a citizen's
7    right to privacy. The constitutional mandate is simply that the government is *prohibited* from
8    *violating* the right."). The court merely commented that when such rights are violated, injunctive
9    relief is available. *Id.* There is no analysis in the opinion explaining why damages would not be
10   available for a violation of the constitutional privacy right and reading the opinion to foreclose a
11   damages remedy goes far beyond what the opinion actually held.

12   In addition, the existence of a common law tort for invasion of privacy that allows for
13   recovery of damages supports an inference that the framers of Section 1 also intended for a
14   damages remedy. As discussed above, *Katzberg* recognized that courts can imply a damage
15   remedy "based upon preexisting common-law duties and rights." 29 Cal. 4th at 322. There is a
16   common law right to privacy in California. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1,
17   24 (1994). Damages historically were available at common law. *See, e.g.*, *Montalti v.
18   Catanzariti*, 191 Cal. App. 3d 96, 99 (1987) (noting damages remedy available for violation of
19   common law right of privacy).

20   Accordingly, for the same reasons recognized in *Katzberg* and *OSJ*, the historic
21   availability of damages for the invasion of privacy at common law supports the conclusion that
22   the framers of Article I, Section 1 intended for damages to be available under the state
23   constitution. Moreover, the constitutional privacy right is broader and more far reaching than the
24   common law right, reinforcing that the framers of Article I, Section 1 would not have intended for
25   a more limited right of recovery than was available at common law. *Hill*, 7 Cal. 4th at 27
26   (commenting that ballot initiative described a broader privacy right that was not limited or
27   "circumscribed" in the same ways as the common law right); *Porten*, 64 Cal. App. 3d at 829
28   (commenting that "[t]he elevation of the right to be free from invasions of privacy to

constitutional statute was apparently intended to be an expansion of the privacy right" and quoting from ballot materials which explained that "[t]his simple amendment *will extend various court decisions* on privacy to insure protection of our basic rights").

Finally, the same practical reasons that support allowing the jury to consider the state unreasonable search claim apply to the privacy claim. If the Court takes the issue away from the jury and the appellate court disagrees, the parties will be forced to re-try the case.

### B. Plaintiffs' Proposed Jury Instruction Accurately Instructs the Jury on the Law

Plaintiffs have proposed two slightly different instructions on their constitutional privacy claim. (*Compare* Plaintiffs' Separate [Proposed] Jury Instructions at 10-11, Aug. 14, 2018, ECF No. 172 (Instruction No. P-10) *with* Plaintiffs' Amended Separate [Proposed] Jury Instructions at 25-26, Sept. 13, 2018, ECF No. 194 (Instruction No. P-10).) Both accurately identify the elements of a constitutional privacy claim and Plaintiffs oppose any instruction that discusses the defense of countervailing interests on the ground that that defense has been waived.

As the California Supreme Court made clear in *Hill*, a privacy claim under the California Constitution has three elements. The first, a legal question, is whether there is a legally protected privacy interest. 7 Cal. 4th at 35. The second element is whether there is a "reasonable expectation of privacy on plaintiff's part." *Id.* at 36. The third and final element is whether the intrusion was "sufficiently serious in [its] nature, scope and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Id.* at 37.[1]

The government's countervailing interest is not an element. It is an affirmative defense. As *Hill* explained, a defendant can prevail by "*pleading and proving*, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." *Hill*, 7 Cal. 4th at 40 (emphasis added). Affirmative defenses are

---

[1] As the California Supreme Court later recognized, a constitutional privacy claim and a common law privacy claim have largely "parallel" elements. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 288 (2009). For that reason, the comments to CACI 1800 discuss both common law and constitutional privacy claims, and it therefore makes sense to use the CACI instruction as a model for a constitutional claim.

waived if not asserted. *Cal. Acad. of Scis. v. Cty. of Fresno*, 192 Cal. App. 3d 1436, 1442 (1987) ("A party who fails to plead affirmative defenses waives them."). Defendants' Answer to the SAC is lengthy and includes no fewer than 22 affirmative defenses. (Defs.' Answer to SAC, May 12, 2015, ECF No. 17.) None of the affirmative defenses address the privacy claim specifically, much less assert that Defendants had a countervailing interest that would justify violating Plaintiffs' privacy rights. Similarly, Defendants submitted their own version of the privacy instruction and never sought to instruct the jury regarding an affirmative defense. Any such affirmative defense has been waived.

Plaintiffs also wish to comment briefly on whether the Court should instruct the jury that Plaintiffs had a reasonable expectation of privacy in their home. As the Order recognizes, Plaintiffs' original instruction instructs the jury that Plaintiffs have a legitimate expectation of privacy in their home. (Plaintiffs' Separate [Proposed] Jury Instructions at 10-11, ECF No. 172.) That is more consistent with federal law, which does not follow an approach that ties the government's right to search to the "consent" of a probationer. It also reflects this Court's previous conclusion that "Because there is no evidence that Plaintiffs unambiguously knew about Mr. Perez's search condition, the Court continues to find they cannot be found as a matter of law to have acquiesced to a reduced expectation of privacy." (Order Re: Renewed Cross-Motions for Summ. J. at 6, Oct. 17, 2017, ECF No. 120.)

For all of these reasons, this is Plaintiffs' preferred privacy instruction. But should this Court determine that it is necessary to instruct the jury in a manner that reflects that older authority from the California Supreme Court employed a consent-based approach to probation searches, then Plaintiffs' amended privacy instruction should be used. That alternate instruction treats the question of whether Plaintiffs had a reasonable expectation of privacy in their home as a factual question for the jury to resolve and includes language lifted directly from the California Supreme Court on the privacy interests of a probationer's co-habitants. (*See* Plaintiffs' Amended Separate [Proposed] Jury Instructions at 25-26, ECF No. 194.) If the Court's final instruction treats Plaintiffs' expectation of privacy as a factual question for the jury, then Plaintiffs respectfully request that the Court give the instruction set forth in Plaintiffs' amended

instructions.

## CONCLUSION

For all of these reasons, the Court should allow Plaintiffs' state claims to be resolved by the jury.

Dated: October 15, 2018         MORRISON & FOERSTER LLP

By:   */s/ Arturo J. González*
           ARTURO J. GONZÁLEZ

Attorney for Plaintiffs
RAUL BARAJAS,
ELVA BARAJAS