DAVID F. BEACH, ESQ. (SBN 127135)
SCOTT A. LEWIS, ESQ. (SBN 149094)
OSCAR A. PARDO, ESQ. (SBN 249955)
PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP
438 First Street, Fourth Floor
Santa Rosa, California 95401
Telephone: (707) 525-8800
Facsimile: (707) 545-8242

Attorneys for Defendants
CITY OF ROHNERT PARK, JACY TATUM, DAVID RODRIGUEZ,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAUL BARAJAS and ELVA BARAJAS,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ROHNERT PARK, a municipal corporation; and JACY TATUM, DAVID RODRIGUEZ and MATTHEW SNODGRASS, officers with the City of Rohnert Park Police Department,<br><br>Defendants.<br>_____/ | Case No.  3:14-cv-05157 SK<br>Honorable Judge Sallie Kim<br><br>**DEFENDANTS' RESPONSE TO COURT ORDER DATED OCTOBER 10, 2018-- DOCUMENT 212**<br><br>Trial<br>DATE:    October 24, 2018<br>TIME:    9:30 A.M.<br>CTRM:   D, 15th Floor |

## I.  INTRODUCTION

Pursuant to the Court's Order dated October 10, 2018 (Document 212), the Court has asked for briefing on potentially six issues. In accordance with the Order, the following briefing addresses the Court's request. The briefing below is divided as follows: The first section explains that California Constitutional Section 1 (Count 5) and Section 13 (Count 2) do not give rise to a suit for damages and there is no need for jury instructions on these two causes.

The second section explains Defendants' position regarding the search of the Barajas

1

residence under California law.

The third section offers the Court a comprehensive jury instruction on California Article 1, Section 13 regarding unreasonable searches.

## II. WHETHER THE CALIFORNIA CONSTITUTION ALLOWS A PLAINTIFF TO SUE FOR DAMAGES PURSUANT TO ARTICLE 1, §§ 1 AND 13 FOR DAMAGES

There is no right to damages under the California Constitution Article 1, Section 1 and 13 of the California Constitution for three reasons.

First, Plaintiff seems to agree. In their trial brief at page 9, Section B, it states, "Plaintiffs seek injunctive relief to prevent future violations of their rights as guaranteed by the California Constitution Article 1, Section 13…and 1…" Similarly, there is no prayer for damages based on these causes. Thus, they don't appear to be seeking damages for these two claims.

Second, *Katzberg v. Regents of the University of California* (2002) 29 Cal.4th 300, 306 establishes a framework for determining the relevant question—whether money damages are available under the specific constitutional provision at issue for the specific wrong alleged. Under such framework, a court considering this question must first "look at the language and history of the provision for an affirmative intent to authorize a claim for damages." *Reinhardt v. Santa Clara County* (N.D.Cal.) 2006 WL 662741, 8 (applying *Katzberg*, supra, 29 Cal. 4th at 317).

Second, where there is no such affirmative intent, the court must consider whether an adequate remedy exists. Third, the court must look to the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision." *Id*.

Fourth and finally, "if these factors weigh against the recognition of a right to damages, the inquiry ends. If, however, the factors weigh in favor of recognizing such a right, the court should also consider any special factors counseling hesitation in recognizing a damages action." *Id*.

As to Article 13—the state analogue to the Fourth Amendment—clearly Plaintiffs have an alternative remedy and the issue whether the language of the constitutional provision creates

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

a claim for damages need not be reached under the *Katzenberg* analysis. Plaintiffs claim that the law supporting the Fourth Amendment and the State Constitutional provision are identical. Therefore, Plaintiffs already have a damages remedy under 42 U.S.C. Section 1983.

Plaintiffs' Count Five alleges violations of California Constitution Article I, § 1. The California Supreme Court has held that a plaintiff can bring a private action for injunctions under Article I, Section 1 for alleged violations of privacy. *Hill v. Nat'l Collegiate Athletic Assoc.* (1994) 7 Cal.4th 1, 20. However, Plaintiffs have not plead monetary damages because alternative remedies are available to Plaintiffs under 42 U.S.C. § 1983. Moreover, allowing Plaintiffs to sue for money damages for an alleged state constitutional privacy violation would create a new cause of action, altering established tort law in California. See CACI 1800.

As to the third reason to reject monetary damages, California has enacted a comprehensive and strict statutory scheme under the Government Tort Claims Act, Government Code Part 2, Chapter 1, Article 1. "Except as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other person." Cal. Gov. Code § 815. "All government tort liability must be based on statute." *Hoff v. Vacaville Unified Sch. Dist.* (1998) 19 Cal.4th 925, 932.

For direct liability, a "specific statute declaring [the entity] to be liable, or at least creating some specific duty of care" must be identified. *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183; *de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 252.

The parties and the Court have undoubtedly encountered a dearth of guiding precedence for the Court's inquiry whether the California Constitution allows a suit for damages. This is because California has established tort damages liability for constitutional violations under the Bane Act, Civil Code § 52.1 (Section 52.1 was modeled after Massachusetts Civil Rights Act of 1979). *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 960.

Civil Code Section 52.1(b) provides:

"(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or by the Constitution or laws of this

state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may-institute and prosecute in his or her own behalf a civil action for damages including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right secured or rights secured…"

Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations. *Reynolds v. County of San Diego* (1996) 84 F.3d 1162, 1170.

The California Supreme Court has repeatedly supported the comprehensive Tort Claims Act. To allow damages claims based on the California Constitution, rather than statute, upends the statutory scheme. There is a specific bar to a suit for damages based on the Tort Claims Act, and there is a specific section by which Plaintiffs can sue for damages allowing such suit, Plaintiffs cannot be awarded damages by suing under broad state constitutional provisions and the operative complaint does not include a claim under the Bane Act. Thus, there is no need or basis for a jury instruction as to Cause Two, Invasion of Privacy and Cause Five- search and seizure under Article 1, Section 13.

### III. DEFENDANTS MAY SEARCH NON- COMMON AREAS OF THE HOME AS A PROTECTIVE SWEEP LOOKING FOR EDGAR PEREZ

After the Officers discussion at the door of the Barajas residence, it is undisputed that Officer Snodgrass and Rodriquez searched the home for Edgar Perez. The actual entry into the dwelling and subsequent search lasted approximately six minutes. Both Officers will testify that they entered all of the rooms and looked into areas where Edgar Perez could access and potentially hide. They will testify that they looked under the beds and into closets of each room. They did not open drawers or look into any private containers such as medicine chests, clothing drawers or any other area where a person could not hide.

Such a search for the probationer is perfectly legal under California law because the probationer had access to those areas. In *People v. Pleasant* (2005) 123 Cal. App. 4th 194, the mother was the probationer who had a search waiver as a condition of probation. She shared a

residence with the son; police sought to search a locked bedroom belonging to the son. The probationer had access to a key to the room. The Officers searched the room and found a gun. The Court held that the son could not reasonably expect privacy in the room in which the probationer had access. The Court opined that persons who live with probationers cannot reasonably expect privacy in areas of a residence that they share with probationers. *Id.* at 198.

Officers may also search areas where Edgar could hide based on a protective sweep. In recent cases, California appellate courts have discussed protective sweeps as broad authorities to protect officers inside the homes of probationers. In *People v. Urruty* 2018 WL 4178286, the First District Court of Appeal stated, "[i]n *Ledesma*, [*People v. Ledesma* (2003) 106 Cal.App.4th 857, 864] Division Five of this court held that a protective sweep "may properly precede a probation search." (*Ibid.*) The decision explained that "[a]mong the circumstances that are appropriately taken into account in evaluating a protective sweep are the type and location of the police action contemplated following the sweep." (*Ibid.*) If officers are about to conduct a probation search inside a home, there may be heighted safety concerns due to "the probable duration of the search, the fact that it would occur on their 'adversary's "turf" '[citation], and the inherent distraction of conducting a careful examination of all the nooks and crannies of a probationer's bedroom." *Id* at *4.

Therefore, under California law, the momentary peeking in the bedrooms of Edgar Perez' home is perfectly appropriate under his probation conditions as well as a protective sweep.

### IV. DEFENDANTS SUBMIT A COMPREHENSIVE JURY INSTRUCTION BASED ON *PEOPLE V. WOODS*

Defendant submits the following instruction regarding the elements of a state search claim under Article 1, Section 13, attached hereto as **Exhibit A**. It is derived exclusively from *People v. Woods* (1999) 21 Cal.4th 668. This instruction is modeled after federal Model Jury Instruction 9.15 (**Exhibit B**).

/ / /

/ / /

# EXHIBIT A

**PARTICULAR RIGHTS—CALIFORNIA CONSTITUTION ARTICLE 1 § 13—UNREASONABLE SEARCH—EXCEPTION TO WARRANT REQUIREMENT—PROBATION SEARCH**

The California Constitution Article 1, § 13 reads:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

In California, probationers may validly consent in advance to warrantless searches in exchange for the opportunity to avoid service of a state prison term. This consent is called a waiver.

Pursuant to a probationer's sentence, a probationer is given search conditions. A search condition is designed to deter further offenses by the probationer and to ascertain compliance with the terms of probation. No suspicion of criminal activity is required.

The warrantless search of a probationer's home need not necessarily be initiated, conducted, or even supervised by a probation officer to qualify as a probation search.

If the search condition allows a search of a residence, Police may search all portions of the residence where the probationer has the mutual use of the property, generally having joint access or control for most purposes.

Police officers generally may only search those portions of the residence they reasonably believe the probationer has complete or joint control over.

A waiver of California Constitution Article 1, § 13 as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons.

/ / /

/ / /

/ / /

/ / /

## ORIGINAL EXHIBIT B

## 9.15 PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEARCH—EXCEPTION TO WARRANT REQUIREMENT—CONSENT

In general, a search of a [person] [residence] [vehicle] [property] is unreasonable under the Fourth Amendment if the search is not authorized by a search warrant. [A "search warrant" is a written order signed by a judge that permits a law enforcement officer to search a particular person, place, or thing.] Under an exception to this rule, a search warrant is not required and a search is reasonable if [the person] [a person in lawful possession of the area to be searched] knowingly and voluntarily consents to the search [and there is not any express refusal to consent by another person who is physically present and also in lawful possession of the area to be searched].

In determining whether a consent to search is voluntary, consider all of the circumstances, including:

1.) Whether the consenting person was in custody;

2.) Whether the officers' guns were drawn;

3.) Whether Miranda warnings were given;

4.) Whether the consenting person was told [he] [she] had the right to refuse a request to search;

5.) Whether the consenting person was told a search warrant could be obtained;

6.) [any other circumstances applicable to the particular case].

In order to prove the search in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that this exception to the warrant requirement does not apply.

## COMMENT

Use this instruction only in conjunction with the applicable elements instructions, Instructions 9.3–9.8 and in conjunction with Instruction 9.12 (Particular Rights—Fourth Amendment —Unreasonable Search—Generally).

It is a well-settled exception to the warrant requirement that an "individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless

search of his person, property, or premises." *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000); see also *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996). Whether a consent to search was voluntarily given is a question of fact "to be determined from the totality of all the circumstances." *United States v. Brown,* 563 F.3d 410, 415 (9th Cir. 2009) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973)). The Ninth Circuit considers five factors in determining voluntariness, which have been incorporated into the above instruction. See, e.g., *Liberal v. Estrada,* 632 F.3d 1064, 1082 (9th Cir. 2011) (applying five-factor test for voluntariness in § 1983 case). "No one factor is determinative in the equation" and "[b]ecause each factual situation surrounding consent to a search is unique," a court may also take into account other relevant factors. *Id*.

In *Georgia v. Randolph*, 547 U.S. 103, 106 (2006), the Supreme Court reiterated this rule: "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." The Court, however, also held that, as between a wife's consent to a search of the family residence and her husband's refusal to consent, "a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him." *Id*. Also see *Bonivert v. City of Clarkston*, 883 F.3d 865, 875 (9th Cir. 2018) ("Applying Randolph, we hold that the consent exception to the warrant requirement did not justify the officers' entry into Bonivert's home. Even though the officers secured [co-occupant] Ausman's consent, Bonivert was physically present inside and expressly refused to permit the officers to enter on two different occasions"). The Ninth Circuit has also determined that after police have obtained consent from one party, they do not have an affirmative duty to seek out a co-tenant in order to inquire if there is an objection.  See *Brown*, 563 F.3d at 416-17 (finding voluntary consent from co-occupant of residence when defendant had been arrested pursuant to valid arrest warrant and placed in squad car prior to consent discussion with co-occupant).

Randolph's exception to the consent rule for third parties does not apply when the

"consent" consists of a probationer's search condition. That scenario requires an examination of whether a warrantless search "was reasonable under the Court's general Fourth Amendment approach of 'examining the totality of the circumstances,' with the probation search condition being a salient circumstance." *Smith v. City of Santa Clara*, 876 F.3d 987, 992 (9th Cir. 2017) (citing *United States v. Knights*, 534 U.S. 112, 118 (2001) (rejecting jury instruction framed in terms of consent based on warrantless probation search condition)).

Whether an individual was told he or she was "free to leave" may implicate both the first factor—whether the individual was in custody—and the fourth factor—whether he or she was informed he or she could refuse consent. See, e.g., *United States v. Russell*, 664 F.3d 1279, 1281 (9th Cir. 2012) (noting that officer's instruction that individual is free to leave is "an instructive, but certainly less clear, way of saying that consent could be refused"); *United States v. Bassignani*, 575 F.3d 879, 886 (9th Cir. 2009) (noting that officer's instruction that individual is free to leave is important consideration in determining whether individual is in custody); but see *United States v. Stephens*, 206 F.3d 914, 917 (9th Cir. 2000) (noting that, when searching bus passengers, "free to leave" warning is inadequate to ensure voluntariness).

The Supreme Court has clarified that an occupant who initially objects, but is later removed by police, is not physically present for the purposes of *Georgia v. Randolph* when reasonable grounds existed for such removal or when probable cause existed for the arrest of the objecting occupant. *Fernandez v. California*, 134 S. Ct. 1126, 1134 (2014) (upholding warrantless search of apartment when consent later obtained from co-occupant after objecting occupant arrested on suspicion of assaulting co-occupant).

Under certain circumstances, a third party may have actual or apparent authority to give consent to the search of another's property. *United States v. Davis,* 332 F.3d 1163, 1169 (9th Cir. 2003); see *United States v. Ruiz*, 428 F.3d 877, 880-81 (9th Cir. 2005) (citing United States v. Dearing, 9 F.3d 1428, 1429-30 (9th Cir. 1993) (stating three-part test to determine apparent authority of third person). When authority to consent is factually disputed, it may be necessary to instruct the jury on these standards.

Relatedly, the "knock and talk" exception, which allows officers to approach a home

1  and knock on the door, does not apply when the officers' purpose in conducting the "knock
2  and talk" is to arrest the occupant. *United States v. Lundin*, 817 F.3d 1151, 1160 (9th Cir.
3  2016).

4  In the context of an airport security screening, consent to search can be implied from
5  the circumstances. *United States v. Aukai*, 440 F.3d 1168, 1179 & n.10 (9th Cir. 2006).

6  A plaintiff alleging a § 1983 claim based on an unreasonable search in violation of the
7  Fourth Amendment has the burden of proving at trial that an asserted exception to the warrant
8  requirement did not apply. *Larez v. Holcomb*, 16 F.3d 1513, 1517-18 (9th Cir. 1994); see also
9  *Mueller v. Auker*, 700 F.3d 1180, 1193 (9th Cir. 2012) (placing burden on plaintiff to establish
10 absence of imminent danger in claim of interference with parent-child relationship); *Pavao v.
11 Pagay*, 307 F.3d 915, 919 (9th Cir. 2002) (reaffirming that plaintiff in § 1983 action "carries
12 the ultimate burden of establishing each element of his or her claim, including lack of consent
13 [to search]"); *cf. Hopkins v. Bonvicino*, 573 F.3d 752, 764 (9th Cir. 2009) (placing burden on
14 defendant to show existence of exigent circumstance at summary judgment stage).

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP

DATED: October 15, 2018    By:  /s/ Scott A. Lewis
                                DAVID F. BEACH
                                SCOTT A. LEWIS
                                OSCAR A. PARDO
                                Attorneys for Defendants
                                CITY OF ROHNERT PARK, JACY
                                TATUM, DAVID RODRIGUEZ,
                                MATTHEW SNODGRASS