1  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
2  CAITLIN SINCLAIRE BLYTHE (CA SBN 265024)
   CBlythe@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Telephone: 415.268.7000
5
   Attorneys for Plaintiffs
6  RAUL BARAJAS
   ELVA BARAJAS
7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13  RAUL BARAJAS and                    Case No. 3:14-cv-05157 SK
    ELVA BARAJAS,
14                                      **PLAINTIFFS' OBJECTIONS AND**
                  Plaintiffs,           **SUGGESTED AMENDMENTS TO**
15                                      **THE COURT'S FINAL JURY**
           v.                           **INSTRUCTIONS**
16
    CITY OF ROHNERT PARK, a municipal   Judge:   Hon. Sallie Kim
17  corporation; and JACY TATUM, DAVID  Dept.:   Courtroom D, 15th Floor
    RODRIGUEZ and MATTHEW SNODGRASS,    Trial Date:  October 23, 2018
18  officers with the City of Rohnert Park Police
    Department,
19
                  Defendants.
20

21         Plaintiffs object to the following jury instructions included in the Court's Final Jury

22  Instructions dated October 26, 2018 (ECF No. 251) and, as set forth below, request that the Court

23  give a separate instruction on punitive damages under California law, as set forth in **Appendix B**.

24         Plaintiffs maintain and do not repeat here prior objections made at argument or in briefing.

25     A.    **Prohibition Against Unreasonable Searches and Seizures (California**
             **Constitution, Article 1, Section 13)**
26

27         Plaintiffs have already noted their position that separate instructions on the Fourth

28  Amendment and the California Constitution, Article 1, Section 13 are unnecessary because the

1   protections under the California provision parallel the protections guaranteed by the Fourth

2   Amendment.  *Sanchez v. Cty. of San Diego*, 464 F.3d 916, 928-29 (9th Cir. 2006) ("the right to be

3   free from unreasonable searches under Art. I § 13 of the California Constitution parallels the

4   Fourth Amendment inquiry into the reasonableness of a search."); *Cleaver v. Super. Ct.*, 24 Cal.

5   3d 297, 302 (1979) ("The Fourth Amendment to the federal Constitution and article I, section 13,

6   of the California Constitution equally guarantee 'The right of the people to be secure in their

7   persons, houses, papers, and effects against unreasonable searches and seizures.'").  Police

8   officers in California are required to comply with the U.S. Constitution and federal law.

9   Accordingly, the California Supreme Court almost certainly would join federal courts and apply a

10  balancing approach to assess the reasonableness of a probation search.  Reaffirming a more

11  relaxed standard than what federal courts apply would serve no purpose and would be

12  inconsistent with the Court's recognition that the state and federal constitutions provide equal

13  guarantees.

14          As an alternative, Plaintiffs urge the Court to consider the state law instruction Plaintiffs

15  previously submitted.  (Pls.' Alternate [Proposed] Jury Instruction Regarding Article 1, section 13

16  of the California Constitution, Oct. 15, 2018, ECF No. 218.)  If the Court uses its current

17  instruction, Plaintiffs request five important amendments.  Plaintiffs' proposed modifications

18  appear in **Appendix A** and are briefly addressed here.

19          First, the first sentence of the instruction refers to a "state prison term."  That term

20  erroneously suggests that Edgar Perez could have been sent to state prison if he was guilty of the

21  *misdemeanor* charges against him.  Two of the three probations here relate to misdemeanors.  To

22  remedy this, Plaintiffs request that the Court use "incarceration" instead of "state prison term."

23          Second, the current instruction does not explain that, even under current California law, a

24  probationer does not waive his or her right to object to searches performed in an unreasonable

25  manner.  *People v. Woods*, 21 Cal. 4th 668, 681-82 (1999) ("[I]t should be emphasized that our

26  holding is not intended to legitimize unreasonable searches with respect to nonprobationers who

27  share residences with probationers.  In all cases, a search pursuant to a probation search clause

28  may not . . . be undertaken in a harassing or *unreasonable manner*." (emphasis added)); *People v.*

*Bravo*, 43 Cal. 3d 600, 607 (1987) (probationer retains right to object to "searches conducted in an unreasonable manner").  The current instruction therefore is incomplete.[1]

Third, the instruction should explain that non-probationers do not waive their rights and enjoy legitimate privacy expectations.  That is established law (both federal and state).  *Smith v. City of Santa Clara*, 876 F.3d 987, 994 (9th Cir. 2017); *People v. Robles*, 23 Cal. 4th 789, 798 (2000) ("[T]here is no doubt that those who reside with [probationers subject to a search condition] enjoy measurably greater privacy expectations in the eyes of society.").  The rights protected by the Fourth Amendment and Section 13 are personal and the rights at issue here are rights of *non*-probationers.  By contrast, the only privacy interest discussed in the current instruction is the privacy interest of a probationer.  Plaintiffs' proposed language is lifted directly from the California Supreme Court and Defendants therefore should have no objection to it.

Fourth, the waiver concept discussed in the instruction is based on a theory of consent.  Accordingly, as set forth in Plaintiffs' proposed instruction in Appendix A, the jury should be told that "A joint occupant's right of privacy in his or her home is not completely at the mercy of another with whom he or she shares legal possession" and "if there are two people living in the residence and one gives consent but the other is physically present and objects, then there is no consent to enter and search the home."  *See, e.g.*, *Tompkins v. Super. Ct.*, 59 Cal. 2d 65, 69 (1963); *People v. Shelton*, 60 Cal. 2d 740, 745 (1964) ("his consent could not justify the invasion of his joint occupant's privacy that occurred when the officer demanded that the door be opened").  If the jury is going to be instructed based on a consent-based theory, then they should also be told about the significance of a co-tenant's objection.

Finally, for the reasons set forth in Plaintiffs' October 26, 2018 Bench Brief (ECF No. 250), the paragraph that discusses the detention should address the importance of reasonable suspicion that a crime had been committed.  Coupled with the statement earlier in the instruction that "[n]o suspicion of criminal activity is required," this instruction could confuse or mislead the

---

[1] The current instruction also is inconsistent with the Court's revised verdict form, which asks the jury to decide whether the search was conducted in an unreasonable manner.

1    jury.  Plaintiffs and their children should only have been detained if there were specific and

2    articulable facts that they had committed or were about to commit a crime.  *People v. Gutierrez*,

3    21 Cal. App. 5th 1146, 1153 (2018) (after extensively summarizing case law, noting that

4    detentions are "seizures" and may be undertaken if there is "articulable suspicion that a person

5    has committed or is about to commit a crime."); *People v. Matelski*, 82 Cal. App. 4th 837, 851

6    (2000) (concluding detention during probation search was reasonable but emphasizing that "this

7    was not a suspicionless intrusion").  While the current instruction lists factors relevant to the

8    balancing test courts perform to determine whether a detention was reasonable, it does not

9    adequately convey the importance of reasonable suspicion that a crime had been committed.

10   Plaintiffs also request other minor changes to use more objective language.

### B.      State Law Instruction on Punitive Damages

12   The jury should be instructed separately on punitive damages under state law.  Plaintiffs

13   propose the Court use CACI 3940 without modification, which is set forth in **Appendix B**.

### C.      Search Performed For Purposes of Harassment (Federal)

15   The new instruction on harassment under federal law is different from the Court's

16   amended verdict form insofar as it still requires the jury to find that the "primary" purpose of the

17   search was to harass.  That difference will confuse the jury.  The language in the jury instruction

18   also is more stringent than what the law requires and will prejudice Plaintiffs.

19   No case appears to require that harassment be the "primary" motivation for a search, nor

20   have Defendants identified such authority.  Rather, courts categorically proscribe "harassing"

21   searches and instruct that searches may not be performed for "illegitimate reasons, such as

22   harassment."  *United States v. King*, 736 F.3d 805, 810 (9th Cir. 2013); *see also Woods*, 21 Cal.

23   4th at 681-82 ("In all cases, a search pursuant to a probation search clause may not . . . be

24   undertaken in a harassing or unreasonable manner."); *Bravo*, 43 Cal. 3d at 608 ("officers cannot

25   act arbitrarily or capriciously or harass a probationer").[2]  The instruction should not include any

___

26   [2] Courts also recognize that, where a search is suspicionless (as the parties have stipulated
     is true here), it is appropriate to examine officers' subjective intent and motives to determine
27   whether a search is harassing.  *Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1227 (N.D. Cal.
     2008) ("in this case where the parole search was not based on probable cause or reasonable

                                                                    (Footnote continues on next page.)

1  qualifier before "purpose."  At a minimum, the instruction should convey that if harassment is "a

2  contributing" factor, it is an illegal search.

3  **D. Judicial Notice**

4  The final instruction included in Docket No. 251 lists the wrong offense date for two of

5  the three offenses.[3]

6  **E. Section 1983 Claim Against Defendant In Individual Capacity – Elements and Burden of Proof**

7

8  Paragraph 2 of this instruction was changed to say "as explained in earlier instructions."

9  That reference is to the particular rights instruction, which appears later in the instructions.  To

10  avoid jury confusion, this instruction should say "as explained in later instructions," as it

11  previously did.  Instead, the same reference in the instruction on ratification (page 21 of Docket

12  No. 251) should be changed to say "as explained in earlier instructions" because the ratification

13  instruction will be given after the particular rights instruction.

14  Dated: October 29, 2018                    MORRISON & FOERSTER LLP

15

16                                             By:  */s/ Arturo J. González*
                                                    ARTURO J. GONZÁLEZ
17

18                                             Attorney for Plaintiffs
                                               RAUL BARAJAS,
19                                             ELVA BARAJAS

20

21

22

23  _____

(Footnote continued from previous page.)

24  suspicion, the jury was properly instructed to examine the motives and intent of Officers
    Parkinson and Midyett to insure that, at the very least, the suspicionless search was not arbitrary,
25  capricious, or harassing.").

26      [3] Based on Plaintiffs' review of documents produced by Defendants, the offense date for
    the second conviction appears to be May 20, 2011, not June 23, 2012.  The offense date for the
27  third conviction appears to be June 23, 2012, not May 21, 2015.

28

**APPENDIX A**

**PROHIBITION AGAINST UNREASONABLE SEARCHES AND SEIZURES**

**(California Constitution, Article 1, Section 13)**

The California Constitution protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

In California, probationers may validly consent in advance to warrantless searches in exchange for the opportunity to avoid ~~service of a state prison term~~incarceration. This consent is called a waiver.  Pursuant to a probationer's sentence, a probationer is given search conditions. A search condition is designed to deter further offenses by the probationer and to ascertain compliance with the terms of probation. Under California law, if a probationer has a search condition allowing warrantless searches, police do not have to suspect the probationer of criminal activity before they can search the home.  ~~No suspicion of criminal activity is required.~~

The warrantless search of a probationer's home need not necessarily be initiated, conducted, or even supervised by a probation officer to qualify as a probation search.

A joint occupant's right of privacy in his or her home is not completely at the mercy of another with whom he or she shares legal possession and if there are two people living in the residence and one gives consent but the other is physically present and objects, then there is no consent (waiver) to enter and search the home.

Those who live with probationers enjoy measurably greater privacy expectations in the eyes of society than probationers.

If the search condition allows a search of a home, police officers may search all portions of the home where the probationer has the mutual use of the property, generally having joint access or control for most purposes, or police officers generally may only search those portions of the home they reasonably believe the probationer has complete or joint control over.

If the search condition allows a search of a home, police officers may constitutionally detain the occupants of the home during a probation compliance search under reasonable circumstances. In determining whether a detention of a person is reasonable, you should consider the nature of the articulable and individualized suspicion justifying the detention.  The

reasonableness of that detention ~~also~~ depends on ~~other~~ factors such as ~~the articulable and reasonable suspicion of the occupants,~~ whether force was used to detain the occupants, ~~whether a gun was used to detain the occupants,~~ the length of the detention, the private or public nature of the detention ~~such that the occupant was or was not publicly humiliated~~, ~~and~~ the need to preserve the officers' safety, and whether officers prevented the occupants from tending to personal needs such as using the restroom or answering the telephone.

If the terms and conditions of the search condition support a search of a home, pursuant to "knock and announce," an officer may enter a house after notice of his authority and purpose is given and he is refused admittance. Once knock and announce has been accomplished at one point, no other knock and announce is required; it is only required at a singular entry point, not every point.

A waiver of California Constitution Article 1, § 13 as a condition of probation does not permit searches undertaken for harassment, ~~or~~ searches for arbitrary or capricious reasons, or searches performed in an unreasonable manner.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX B**

**PUNITIVE DAMAGES (CALIFORNIA STATE LAW)**

If you decide that Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass's conduct caused Plaintiffs harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages only if Plaintiffs prove by clear and convincing evidence that Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass engaged in that conduct with malice, oppression, or fraud.

"Malice" means that Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass acted with intent to cause injury or that Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass's conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of their rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass intentionally misrepresented or concealed a material fact and did so intending to harm Plaintiffs.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a)     How reprehensible was Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass's conduct? In deciding how reprehensible Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass's conduct was, you may consider, among other factors:

1.     Whether the conduct caused physical harm;

2.        Whether Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass disregarded the health or safety of others;

3.        Whether Plaintiffs were financially weak or vulnerable and Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass knew Plaintiffs were financially weak or vulnerable and took advantage of them;

4.        Whether Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass's conduct involved a pattern or practice; and

5.        Whether Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass acted with trickery or deceit.

(b)       Is there a reasonable relationship between the amount of punitive damages and Plaintiffs' harm or between the amount of punitive damages and potential harm to Plaintiffs that Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass knew was likely to occur because of their conduct?

(c)       In view of Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass's financial condition, what amount is necessary to punish him/them and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass has substantial financial resources. Any award you impose may not exceed Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass's ability to pay.

Punitive damages may not be used to punish Jacy Tatum, David Rodriguez, and/or Matthew Snodgrass for the impact of their alleged misconduct on persons other than Plaintiffs.