ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ALEXIS A. AMEZCUA (CA SBN 247507)
AAmezcua@mofo.com
CAITLIN SINCLAIRE BLYTHE (CA SBN 265024)
CBlythe@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000

Attorneys for Plaintiffs
RAUL BARAJAS
ELVA BARAJAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAUL BARAJAS and ELVA BARAJAS, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ROHNERT PARK, a municipal corporation; and JACY TATUM, DAVID RODRIGUEZ and MATTHEW SNODGRASS, officers with the City of Rohnert Park Police Department, <br><br> Defendants. | Case No. 3:14-cv-05157 SK <br><br> **PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF** <br><br> Judge:   Hon. Sallie Kim <br> Dept.:   Courtroom C, 15th Floor <br> Hearing Date: January 7, 2019 <br> Hearing Time: 9:30 a.m. |

On November 1, 2018, a jury in this matter unanimously found that each of the Defendants had violated Plaintiffs' state and federal constitutional rights.  In an Order issued that same day, this Court directed Plaintiffs to file a brief in support of their request for injunctive relief no later than November 15, 2018.  This brief, and the accompanying proposed order granting injunctive relief, responds to that request.

This Court has authority to grant injunctive relief to prevent Defendants from continuing their unconstitutional practices. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) (affirming injunction barring unconstitutional police search practices and mandating training for officers). Injunctive relief (including additional training) is necessary here because the testimony at trial was clear that Defendants believe they have done nothing wrong, they have not changed their practices, and no additional training has been provided to officers.

Specifically, Plaintiffs request that this Court enjoin the following unlawful practices based on the evidence presented at trial:

**1.   Performing Probation Searches Based Solely on a Probation Condition**

As this Court noted in its instructions, a search condition alone does not give police officers the automatic right to search a home, and it does not automatically render the search reasonable. (Dkt. 256 at 16.) In determining whether a probation search is reasonable, officers should consider a variety of factors that the jury was instructed on, such as whether the probationer has committed a crime of violence, whether he is suspected of committing a new crime, and whether a co-tenant is objecting to the probation search. (*Id*. at 16-18.)

Defendants admitted at trial that they do not consider any of the factors that the jury was instructed on. Instead, Defendants' practice is to search (by force, if necessary) based solely on the fact that someone is on probation, even if it is for a misdemeanor offense, even if there is no history of violence, even if the probationer is not suspected of any new crime, and even where present co-tenants who are not suspected of wrongdoing object to the search. For example, Sgt. Justice testified as follows:

> Q.   And then with respect to a residence, if you have someone who lives in a home in your town and the officer knows that that person is on probation and that they have a search condition, can the officer search that home at any time of the day <u>based on that alone</u>?
>
> A.   <u>Based on their search condition, yes</u>.

> Q.    And <u>that's consistent with the way you've trained your officers</u>?
>
> A.    Yes.
>
> Q.    And by the way, I may have missed this at the beginning, but you understand you are here as a representative of the department to testify on these matters.
>
> A.    Yes.

(Trial Transcript ["TT"] 274:1-13 (emphasis added).)[1]

Defendant Rodriguez testified that it is his understanding that officers can enter a home based on the probation condition alone at any time between 6:00 a.m. and 10:00 p.m. (*Id.* 142:5-9.) He has not been told to consider any of the factors that the jury was instructed on:

> Q.    Has anyone at the Rohnert Park Police Department ever told you that one of the things that you should consider in deciding whether or not to enter a home for a probation search with a search condition is whether or not the people who are at the door are consenting?
>
> A.    No.
>
> Q.    Has anyone ever told you that you should consider the nature of the underlying offense that led to probation when deciding whether or not to enter the house?
>
> A.    No.
>
> ***
>
> Q.    [H]as anyone ever told you at the Rohnert Park Police Department that when you are deciding whether or not to do a probation search of someone's home, you should take into consideration whether or not they're accused of having committed a new crime?
>
> A.    No.

(TT 146:11-20, 147:10-15.)

Defendant Rodriguez confirmed that he would force his way into the home of an objecting single mother whose daughter was on probation for a misdemeanor, based solely on the fact that there is a probation condition:

---

[1] A copy of all trial transcript excerpts cited herein are attached to Amezcua Declaration as Exhibit A.

> Q. And to be clear, even if the daughter is not being accused of any crime, even if there's no emergencies, even if she has no other criminal record of violence, you would still come in even though the mother is telling you, "I don't want you in my house"; true?
>
> A. Yes.
>
> Q. And if she wouldn't let you in, you would force your way in; true?
>
> A. Yes.

(*Id*. 143:6-14.)

### 2. Entering Through Rear Door Before Tenants Have Opportunity to Comply

Under California law, officers may not enter a home until they are "refused admittance." (Dkt. 256 at 27:2.) And under federal law, officers must give residents a reasonable opportunity to comply with their demand to enter. (*Id*. at 17:12.) There is substantial evidence that after entering the side gate, Defendant Tatum entered the Barajas home (from the side door) before Mr. Barajas had an opportunity to comply with the request to enter his home. Mr. Barajas testified that he only spoke with officers at the front door for "seconds" before realizing that Defendant Tatum was already inside of his house:

> Q. How much time do you think passed while you were having this conversation with the police officer at the front door?
>
> A. I'm not exactly sure, but <u>it was a matter of seconds</u>. It wasn't very long.
>
> Q. And I believe in the testimony you gave earlier at some point during that conversation you looked back, I believe you said, and saw the third police officer in your home already. Correct?
>
> A. Yes.

(TT 386:5-13 (emphasis added).) Defendant Snodgrass confirmed that Tatum was inside of the home during the time that he and Rodriguez were still outside speaking to Mr. Barajas. (TT 108:24-109:1.)[2]

Significantly, Tatum later told Rodriguez that he was inside the house listening to the

---

[2] In deposition, both Defendants Snodgrass and Rodriguez testified that they did not know how long they spoke to Mr. Barajas before entering his home. (TT 109:14-16, 150:11-16.)

conversation between Mr. Barajas and the other two officers:

> Q.   And you were trying to explain to him why, at least in your view, you had a right to go in. And, lo and behold, Officer Tatum ends up standing next to them; right?
>
> A.   Yes.
>
> Q.   And Officer Tatum later told you that <u>he was actually inside, listening to your conversation</u>; right?
>
> A.   <u>That's true</u>.

(TT 149:24-150:5 (emphasis added).)

Tatum's antics were not unusual for him or for Rohnert Park. Sergeant Justice testified that as long as an officer knows that other officers will be "attempting contact" at a residence, that officer can enter the residence through a rear door. (TT 551:6-14.) And Tatum testified that he has entered homes through the rear 50 to 60 times. (TT 244:14-17.) Defendant Snodgrass admitted that entering from the rear was the "practice" in Rohnert Park. (TT 111:14-19.)

Finally, Tatum admitted that he viewed it as his job to enter through the back, even though he did not know whether Defendants Rodriguez and Snodgrass had entered through the front:

> Q.   So even though you didn't know for certain that the officers had already entered the house, it was your understanding that it was your job, <u>consistent with your training</u>, to enter the back of the home.
>
> A.   Yes.

(TT 239:9-12 (emphasis added).)

### 3.   Searching Every Room

As the Court noted in its instructions, officers cannot automatically search every room in a home. (Dkt. 256 at 17, 26.) But that is what officers do in Rohnert Park. Even on routine probation searches that do not involve felonies, violence, or serious crimes, officers search every room in the home, without even considering whether the probationer has "control" or "use" of that part of the house. In this case, every room was searched and Defendants Snodgrass and Rodriguez testified that that is how Rohnert Park trains its officers and that is their practice:

> Q.   You were trained by the police department at Rohnert Park, regardless of the situation you've got to search all the rooms in the home in a probation search; right?

\* \* \*

A. Yes.

\* \* \*

Q. And when you usually conduct probation searches, do you search just a room of the probationer or do you search all the rooms in the home?

A. <u>I search all the rooms</u>.

(TT 129:18-20, 129:23, 140:7-10 (emphasis added).)

**4.     Detaining All Occupants**

Officers cannot automatically detain everyone in a home during a probation search. Whether the detention is reasonable depends on the circumstances. In Rohnert Park, detaining all residents is the practice. Tatum was impeached at trial with his deposition testimony where he made it clear that Plaintiffs and their children were not free to leave, or to move, during the search:

Q. Would it have been a problem if they had gone to other parts of the house? I'm asking you here about the Barajas family.

A. Yes. <u>Most definitely</u>.

Q. So you would have instructed them to stay put?

A. If they would have walked somewhere or attempted to leave somewhere, yes, I would have.

(TT 246:6-11 (emphasis added).) Tatum's supervisors, including the former police chief, have all concluded that Defendants did nothing wrong and that their conduct was consistent with their training and with Rohnert Park policy and practices. For example, former Chief Masterson testified:

Q. Now, if the same – the same facts happened tomorrow, same search, same facts, just re-do, would you still have the same opinion that the officers complied with Rohnert Park policies, with standard search practices, that what they did complied with the law in Rohnert Park?

A. Exact same thing?

Q. Uh-huh.

A. And would I approve.

      Q.    Correct.

      A.    I would.

(Dkt. 258 at 61:17-62:2.)

### 5. Performing probation searches when no one is home

Sgt. Justice testified that in Rohnert Park, officers can search a residence "even if nobody is home." (TT 551:6-14.) This is an unreasonable practice. Unless there are exigent circumstances, police should not be entering private homes to conduct routine probation searches.

### 6. No policy on probation searches

Rohnert Park does not have any written policy at all that guides officers on when to conduct probation searches, or on what factors to consider before deciding to force entry into a residence. (TT 97:22-98:6.) No one is in charge of supervising or coordinating probation searches. (*Id*. 97:15-21.) Since Rohnert Park disbanded a special enforcement unit in 2009 or 2010 that was responsible for conducting probation searches, patrol officers are now responsible for conducting probation searches, but they have not been provided with any training on how to do so. (*Id*. 98:20-22; 523:15-524:18.) Accordingly, Defendants do not even consider the litany of factors that officers should consider in determining whether a forcible probation search of a residence is reasonable. (*Id*. 146:11-20, 147:10-15.) Instead, Rohnert Park officers appear to make up their rules as they go along, which results in incidents such as this one, where an officer will deviate from the "plan" and rush through a side door before residents have an opportunity to answer the door, or to consent to the search. And Sergeant Justice testified that such tactics are permissible, as long as other officers were "going to be attempting contact" at the front door. (TT 551:6-14.) As a result of this lax training, Officer Rodriguez testified that probationers in Rohnert Park are treated like inmates. (*Id*. 146:2-7.)

### INJUNCTIVE RELIEF SHOULD INCLUDE TRAINING

Where, as here, the jury has found multiple constitutional violations, and where there is overwhelming evidence that police officers have not been properly trained, it is critical that a court's injunction include a requirement that the municipality train its officers. In *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015), the District Court found after a bench trial that the

defendants had an unlawful policy of stopping and detaining Latino drivers. The District Court's injunction included a directive that deputies be provided twelve hours of training on racial profiling within 240 days and at least six hours annually thereafter. In addition, "Defendants must also provide additional training on the Fourth Amendment." *Id*. at 1266. The Ninth Circuit affirmed, holding that the injunction was aimed at eliminating the constitutional violations.

The jury's verdict in this case, and the testimony of Defendants and their supervisors confirm that such training is necessary here as well. In the proposed order granting injunctive relief (filed concurrently with this brief), Plaintiffs recommend some very modest training that should prevent future constitutional violations pertaining to probation searches of a residence.

## CONCLUSION

For all of the reasons stated herein, the requested injunctive relief should issue.

Dated: November 15, 2018            MORRISON & FOERSTER LLP


By:   */s/ Arturo J. González*
          ARTURO J. GONZÁLEZ

       Attorney for Plaintiffs
       RAUL BARAJAS,
       ELVA BARAJAS