ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
CAITLIN SINCLAIRE BLYTHE (CA SBN 265024)
CBlythe@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000

Attorneys for Plaintiffs
RAUL BARAJAS
ELVA BARAJAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAUL BARAJAS and ELVA BARAJAS,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ROHNERT PARK, a municipal corporation; and JACY TATUM, DAVID RODRIGUEZ and MATTHEW SNODGRASS, officers with the City of Rohnert Park Police Department,<br><br>Defendants. | Case No. 3:14-cv-05157 SK<br><br>**REPLY BRIEF IN SUPPORT OF INJUNCTIVE RELIEF**<br><br>Judge:  Hon. Sallie Kim<br>Dept.:  Courtroom C, 15th Floor<br>Hearing Date:  January 7, 2018<br>Hearing Time: 9:30 a.m. |

## SUMMARY OF REPLY

Defendants' opposition has two major flaws: (1) it assumes that money will cure constitutional violations, and (2) it fails to recognize that a jury has already found that Defendants' actions and practices violate the law.  The City of Rohnert Park's insistence that Defendants have done nothing wrong, and its continued refusal to adopt a written policy, to provide training, or to take any remedial action underscores the need for injunctive relief.

## I. MONETARY COMPENSATION DOES NOT ADEQUATELY COMPENSATE PLAINTIFFS FOR THEIR CONSTITUTIONAL DEPRIVATIONS

The Ninth Circuit has recognized that "constitutional violations cannot be adequately remedied through damages and generally constitute irreparable harm." *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F. 3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011). The suggestion by Defendants to the contrary—that "there is no 'irreparable injury' because Plaintiffs have been adequately compensated" (Opp. at 2)—misstates the law. Such a policy would allow the government to purposely violate someone's rights, as long as the government paid a fee for doing so. That is not, and cannot be, the law. One example illustrates this point. Imagine there is a public official (such as a home inspector) who is known to abuse women by entering their homes without their permission, in violation of their right to privacy. The employer knows about this conduct but does nothing to stop it. Would anyone seriously contend that a permanent injunction could not issue because the women would be adequately compensated by monetary damages?

## II. DEFENDANTS IGNORE THE FACT THAT THERE IS SUBSTANTIAL EVIDENCE THAT THE CITY OF ROHNERT PARK HAS SANCTIONED AND APPROVED THE UNLAWFUL CONDUCT AT ISSUE

The Ninth Circuit has recognized that the "likelihood of future injury" requirement is satisfied where there is evidence of a pattern or practice of officially sanctioned behavior. For example, in *LaDuke v. Nelson*, 762 F.2d 1318, 1321 (9th Cir. 1985), the Immigration and Naturalization Service ("INS") conducted farm and ranch checks of migrant farm housing without a warrant, probable cause, or reasonable suspicion. Plaintiffs, residents of such dwellings, sued the INS, arguing that such searches violated the Fourth Amendment. The District Court found that there was practice of unlawful conduct and granted injunctive relief, and the Ninth Circuit affirmed.

Here, there is substantial evidence that Plaintiffs may again be subjected to an unlawful search of their home. First, Defendants ignore the fact that their officers search homes based solely on a search condition, without considering any other factors, such as whether the offense is for a misdemeanor, whether it involves violence, or whether a co-tenant has objected to the

search. (Trial Transcript ["TT"] 146:11-20, 147:10-15, 274:1-13.)[1]  Second, the evidence was undisputed that Defendants have a "practice" of entering homes through the back door, even where there are no exigent circumstances and before residents have an opportunity to comply with a request to enter their home. Defendant Snodgrass admitted that entering from the rear was the "practice" in Rohnert Park. (TT 111:14-19.) And Defendant Tatum testified that he has entered homes through the rear 50 to 60 times. (TT 244:14-17.) And, Tatum admitted that he viewed it as his job to enter through the back, even though he did not know whether Defendants Rodriguez and Snodgrass had entered through the front:

> Q. So even though you didn't know for certain that the officers had already entered the house, it was your understanding that it was your job, <u>consistent with your training</u>, to enter the back of the home.
>
> A. Yes.

(TT 239:9-12 (emphasis added).) Defendants simply ignore this evidence, and provide no evidence to the contrary.

Defendants' only response to this powerful evidence is to make up facts, to pretend that these are "hypothetical questions" and to reargue the evidence that the jury rejected at trial. For example, Defendants cite to Tatum's testimony where he claims that he entered the back after Officer Snodgrass said they were with somebody at the front door. (Opp. at 5, citing TT 256:11-257:5.) But Officer Snodgrass refuted that testimony and said he had no recollection of making any such statement. (TT 108:4-13.) In addition, the transcription of the conversations between the officers does not include any such communication from Snodgrass. (*See* Trial Ex. 13; Morales Decl. Ex. B.) Moreover, even if Snodgrass had made such a statement, that would not have authorized a rear door entrance because the residents have to be given an opportunity to comply with the request to enter. (*See* Section 3, *infra*.)

Defendants also contend that the search was reasonable because Plaintiffs' son "was suspected of dealing narcotics and possessing a weapon." (Opp. at 4.) Defendants claim this is

---

[1] All trial transcripts cited herein are attached as Ex. A to the Morales Declaration.

1  "reasonable suspicion that Perez was committing a crime." (Id.) Defendants have apparently
2  forgotten that *they stipulated prior to trial that this search did not involve reasonable suspicion*.
3  (Joint Pretrial Conf. Stmt., Dkt. 149 at 4.) Moreover, as the Court well knows, Plaintiffs' son has
4  never been arrested or charged with dealing narcotics or possessing a gun. And there is no such
5  reference in any police report to drug dealing or weapons. Most incredibly, the officers changed
6  their testimony in this civil trial from what they had testified to in the related criminal hearing on
7  a motion to suppress. (*See* TT 132:1-138:11, 222:1-224:5.)

8  Finally, even after the jury verdict, Defendants continue to insist they did nothing wrong.
9  The former Chief of Police testified that if the same thing were to happen tomorrow, he would
10 have no problem with it. (TT (5/2/16 depo) of Chief Masterson, p. 61:17-62:2.) Searches such as
11 the one in this case are "business as usual" in Rohnert Park, and there is every indication that they
12 will continue unless this Court enjoins such conduct.

13 **III. CALIFORNIA LAW REQUIRES THAT RESIDENTS BE GIVEN AN OPPORTUNITY TO COMPLY DURING ROUTINE PROBATION SEARCHES**
14
15 Defendants continue to insist that "[t]here is nothing in California law which requires the
16 police to give an occupant 'an opportunity to comply.'" (Opp. at 8.) That erroneous assertion, by
17 itself, illustrates the need for injunctive relief. Under California law, where (as here) there are no
18 exigent circumstances, officers cannot simply knock, announce, and enter. They must give the
19 residents a reasonable opportunity to surrender their premises voluntarily. *See People v. Alaniz*,
20 182 Cal.App.3d 903, 906 n.2 (1986) ("Where compliance with knock-notice provisions is not
21 excused, police officers must give the occupant of a residence a reasonable opportunity to
22 surrender his privacy voluntarily"); *People v. Abdon*, 30 Cal.App.3d 972, 977 (1972) (same);
23 *People v. LaJocies*, 119 Cal.App.3d 947, 952 (1981) (after knock and notice, officer "must allow
24 an occupant a reasonable opportunity to respond before entering a residence to conduct a
25 search"); *People v. Gonzalez*, 211 Cal.App.3d 1043, 1047 (1989) (must be "refused entry" before
26 officers can enter home).

27
28

## IV. DEFENDANTS HAVE A PRACTICE OF SEARCHING EVERY ROOM IRRESPECTIVE OF WHETHER THERE ARE "SPECIFIC AND ARTICULABLE" FACTS THAT AN INDIVIDUAL POSES A DANGER

Relying on *Maryland v. Buie*, 494 U.S. 325 (1990), Defendants claim that they can search every room if they possessed a reasonable belief based on "specific and articulable facts" that the area searched harbored an individual who posed "a danger to the officers or others." (Opp. at 11.) But the evidence at trial was that Defendants *always* search every room—irrespective of any facts that a person posed a threat to officers. This was made clear in the testimony of Officer Rodriguez, who testified that that is how Rohnert Park trains its officers:

> Q. You were trained by the police department at Rohnert Park, regardless of the situation you've got to search all the rooms in the home in a probation search; right?
>
> * * *
>
> A. Yes.
>
> * * *
>
> Q. And when you usually conduct probation searches, do you search just a room of the probationer or do you search all the rooms in the home?
>
> A. <u>I search all the rooms</u>.

(TT 129:18-20, 129:23, 140:7-10 (emphasis added).)

Indeed, even in this case, no one testified that they searched all of the rooms because of a fear that Mr. Perez endangered them. Indeed, Officers Rodriguez and Snodgrass testified that they did not draw their weapons during the search because they saw no need to. (TT 128:12-25, 145:6-10.)

## V. PLAINTIFFS' PROPOSED ORDER ON INJUNCTION DOES NOT ADDRESS THE DETENTION OF RESIDENTS

Defendants claim that the proposed injunction is unreasonable because "detention of the occupants is automatic during a probation search." (Opp. at 13.) Plaintiffs do not agree with Defendants' legal conclusion or their reliance on *Sanchez v. Canales*, 574 F.3d 1169 (9th Cir. 2009). *See Smith v. City of Santa Clara*, No. 5:11-CV-03999-LHK, 2013 WL 164191, at *9-10 (N.D. Cal. Jan. 15, 2013), *aff'd*, 876 F.3d 987 (9th Cir. 2017) (noting that the *Sanchez* holding has

been "called into question"). Whether a detention is reasonable depends on a number of factors, including the length and circumstances of the detention. Having said that, this is a non-issue. Plaintiffs included a short discussion regarding the detention of occupants in order to show that additional training is necessary. However, *Plaintiffs' proposed order does not include a request for injunction addressing the detention of residents*.

## VI. CONDUCTING PROBATION SEARCHES WHEN NO ONE IS HOME IS UNREASONABLE

Defendants seem to concede that they sometimes conduct probation searches when no one is at home (they certainly do not deny doing so). That practice is unreasonable. Defendants' only response to this requested injunctive relief is to complain that Plaintiffs want them to knock and, if no one answers, "simply walk away." (Opp. at 14.) But barring exigent circumstances, that is exactly what should happen. Obviously, if the officers hear noise inside the home, they would have a reasonable basis for entering. But if no one is home and there are no exigent circumstances, officers should not be entering the home (by force or otherwise) to conduct a routine probation search. Defendants do not cite any authority to the contrary.

## VII. THE NEED FOR A WRITTEN POLICY IS OBVIOUS AND REASONABLE

Defendants claim that they don't need a written policy on probation searches because they already have one, citing to Defendants' Proposed Trial Exhibit No. 6. (Opp. at 14.) That document does not provide any guidance regarding how to conduct a probation search (such as whether and when to search all rooms in the home) and what factors an officer should consider in deciding whether a search would be reasonable. (Morales Decl. Ex. C.) Given the admitted practice of the department, the policy should also address when it would be appropriate for officers to enter a home through a rear entrance, since that was obviously an issue in this case and the officers and their supervisors have testified that all of Defendants' conduct was reasonable.

Finally, the notion that Defendants do not need a written policy because officers are taught at the police academy is unsupported by the record. Defendant Snodgrass testified that the police academy does not offer any courses on how to conduct a probation search. (TT 98:7-25.)

Defendants obviously would have filed actual evidence with this Court (such as classroom or teaching materials) if such courses were taught.

## VIII. DEFENDANTS' REFUSAL TO PROVIDE EVEN MODEST TRAINING TO ITS OFFICERS IS TROUBLING, AND FURTHER EVIDENCE THAT INJUNCTIVE RELIEF IS NECESSARY

This Court heard the evidence. No one is in charge of supervising or coordinating probation searches. (*Id*. 97:15-21.) Since Rohnert Park disbanded a special enforcement unit in 2009 or 2010 that was responsible for conducting probation searches, patrol officers are now responsible for conducting probation searches, but they have not been provided with any training on how to do so. (*Id*. 98:20-22; 523:15-524:18.) This evidence is undisputed. Nonetheless, Defendants insist that "training is not necessary." (Opp. at 16.)

The jury found municipal liability after Plaintiffs argued that officers were not properly trained. There is substantial evidence to support that argument. Plaintiffs' request that Rohnert Park officers be trained is reasonable, and modest, and consistent with Ninth Circuit practice. *Melendres v. Arpaio*, 784 F.3d 1254, 1266 (9th Cir. 2015) (affirming injunction that required 12 hours of training on racial profiling within 240 days and six hours annually thereafter).

## IX. THE BALANCE OF HARDSHIPS FAVORS INJUNCTIVE RELIEF

If Defendants continue on their current path, it is plain that the Fourth Amendment rights of Rohnert Park residents will be endangered. In contrast, the requested injunction is appropriate and will not impose a hardship on Defendants. At no point do Plaintiffs ask the Court to "ban probation searches," as Defendants' claim. Rohnert Park is obligated to train its officers and there is no reason why it cannot include training on probation searches as part of its ongoing curriculum. Plaintiffs understand the necessity of probation searches. But they must be done in a manner that complies with state and federal law. The jury's verdict—contrasted with Defendants' ongoing insistence that they did nothing wrong—underscores the need for this Court's intervention.

**CONCLUSION**

Plaintiffs' request for injunction is a modest one. It was clear from the trial, and from the jury's verdict, that the City of Rohnert Park needs to provide better guidance to its officers regarding probation searches. There are undoubtedly many other families whose constitutional rights have been (or will be) violated, but who cannot afford the enormous expense of litigation. Unless an injunction is issued, nothing will change.

For the reasons stated herein and in Plaintiffs' moving papers, the requested injunction should issue.

Dated: December 6, 2018                    MORRISON & FOERSTER LLP


By:    /s/ Arturo J. González
         ARTURO J. GONZÁLEZ

Attorneys for Plaintiffs
RAUL BARAJAS,
ELVA BARAJAS