UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL BARAJAS, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>CITY OF ROHNERT PARK, et al.,<br><br>        Defendants. | Case No. 14-cv-05157-SK<br><br>**AMENDED ORDER REGARDING PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF**<br><br>Regarding Docket No. 271 |

The jury returned a verdict in favor of Plaintiffs Elva Barajas and Raul Barajas ("Plaintiffs") and awarded damages to Plaintiffs, and Plaintiffs now move for injunctive relief. Having carefully considered the parties' papers, relevant legal authority, and the record in the case, and having had the benefit of oral argument, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiffs' request for injunctive relief for the reasons set forth below. In accordance with the jury's verdict, and after considering the testimony, documentary evidence, and arguments of counsel presented during and after trial, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

This incident concerns a "suspicionless" search of Plaintiffs' residence in Rohnert Park, California, on November 4, 2014. Plaintiffs are the mother and step-father of Edgar Horacio Perez ("Mr. Perez"). Plaintiffs lived with Mr. Perez, their adult daughter Lorena Barajas, and another son, Rene Barajas,[1] in a house located at 7701 Santa Barbara Drive in Rohnert Park, California in November 2014. Defendants are the City of Rohnert Park and Rohnert Park Police Officers Jacy

---

[1] Plaintiffs described Rene Barajas as a "special needs" son without further description, and the Court infers from this description that Rene Barajas has a disability for which he needs assistance.

Tatum, David Rodriquez, and Matthew Snodgrass.[2]

Events Four Years Earlier:  November 12, 2010

Officer Tatum testified at trial that, on November 12, 2010, he met with a confidential informant who told him that Mr. Perez was selling drugs.  Officer Tatum told Officer Rodriguez, who then assisted him in interrogating Mr. Perez.  Officers Rodriguez and Tatum encountered Mr. Perez outside the home located at 7701 Santa Barbara Drive in Rohnert Park, California.  In that encounter, Mr. Perez injured Officer Rodriguez, and Officers Rodriguez and Tatum arrested Mr. Perez.

None of the information about the confidential informant was in the police report that Officers Rodriguez and Tatum wrote after the November 12, 2010 arrest, and Officers Rodriguez and Tatum did not testify about the existence of the confidential informant during their testimony for the preliminary hearing for Mr. Perez, even though a central issue was the reason they initially decided to interview Mr. Perez.  Instead of revealing the confidential informant, Officer Tatum testified that the reason he decided to interview Mr. Perez was that he saw Mr. Perez, who appeared to be under the influence of drugs while Mr. Perez was tossing a football with Rene Perez in the front of their house.  At trial for this matter, neither Officer Rodriguez nor Officer Tatum provided a name for the confidential informant.[3]

Mr. Perez was charged with crimes, and on August 29, 2012, Mr. Perez pled *nolo contendere* (no contest) to California Penal Code § 148(a)(1), resisting arrest, a misdemeanor, based on an offense date of November 12, 2010.  Thus, he was convicted of this offense.  Mr. Perez was placed on probation (a conditional sentence) for 36 months with the following condition(s):

> Be of good conduct and obey all laws.
>
> Submit to a warrantless search and seizure of person, property, or vehicle at any time of the day or night.
>
> Submit to warrantless search/seizure of residence any time of the day or

---

[2] Officers Rodriguez and Tatum were not employed as police officers by the City of Rohnert Park at the time of trial.
[3] Officer Tatum was concerned about revealing the identity of the confidential informant, but Defendants never asked the Court to preserve the identity.

> reasonable hour of the night by any probation/law enforcement officer.
>
> Do not possess or use controlled substances or associated paraphernalia without valid prescription.

This probation (conditional sentence) ended August 29, 2015. The condition of search is referred to as a "probation search condition."

Additional Convictions for Edgar Perez

In addition, Mr. Perez had convictions for two additional offenses based on later actions. On August 29, 2012, Mr. Perez pled *nolo contendere* (no contest) to California Health and Safety Code § 11550(a), which proscribes the use or being under the influence of a controlled substance, a misdemeanor. Thus, he was convicted of this offense. Mr. Perez was placed on probation (a conditional sentence) for 36 months with identical terms as stated above, but this probation (conditional sentence) ended October 17, 2015.

On May 5, 2013, Mr. Perez pled guilty to California Health and Safety Code § 11377(a), possession of a controlled substance, a felony. Thus, he was convicted of this offense. Mr. Perez was placed on probation (a conditional sentence) for 36 months with identical terms as stated above, but this probation (conditional sentence) ended May 2, 2016.

Thus, in November 2014, Mr. Perez was on probation for convictions relating to resisting arrest (PC 148(a)(1)), simple possession (HS 11550(a)), and possession of controlled substance (HS 11377(a)). His final term of probation ended May 2, 2016 – three years after his last conviction.

Information Allegedly Obtained Six to Eight Months before Incident

Officer Rodriguez testified that, six to eight months before November 4, 2014, he obtained information from a confidential informant that Mr. Perez was selling methamphetamine and was armed with a handgun. Officer Tatum testified that Officer Rodriguez told him that Mr. Perez had a gun, and Officer Tatum also believed that Mr. Perez had a gun because people who have drugs often have guns with them. Officer Tatum also testified that he believed that Mr. Perez had drugs because of his prior contacts with Mr. Perez in which Mr. Perez was in possession of drugs. However, no one from the Rohnert Park Police Department took any action until November 4, 2014, and no one from the Rohnert Park Police Department informed Mr. Perez's probation

officer of the facts, which if true, constituted a violation of probation. Defendants did not provide any documentary evidence to corroborate this information that a confidential informant had notified Officer Rodriguez that Mr. Perez had methamphetamine and a gun. Neither Officer Rodriguez nor Officer Tatum provided a name for the confidential informant. Officer Tatum testified that he chose not to arrest Mr. Perez immediately even after learning of Mr. Perez's illegal actions because Mr. Perez was acting as a confidential informant for Officer Tatum. Defendants did not provide any documentary evidence and did not provide any other witness to corroborate this information that Mr. Perez was acting as a confidential informant to Officer Tatum. In addition, even though Officers Rodriguez and Tatum had encountered Mr. Perez in possession of methamphetamine in the past, they did not testify that Mr. Perez had a gun with him on those occasions.

The Court does not find credible that Officer Rodriguez learned, six to eight months before November 4, 2014, that Mr. Perez was selling drugs and possessed a gun and the Court does not find credible that Mr. Perez was working with Officer Tatum as a confidential informant in the months before November 4, 2014. There was no documentary evidence to support either of these claims; there were no details about the alleged information and cooperation; there was no corroborating testimony from another other officer about these facts; and there was no explanation for suddenly deciding to search Mr. Perez pursuant to his search condition on November 4, 2014.

<u>Decision to Search on November 4, 2014</u>

On November 4, 2014, at 4:52 p.m., Officers Rodriguez, Snodgrass, and Tatum went to Plaintiffs' home to conduct a search of Mr. Perez's residence pursuant to his probation search conditions. There was no urgency or exigent circumstances to do the search on that day.

The idea for the search originated with Officer Tatum. Officer Tatum believed that Mr. Perez was in possession of drugs. Officer Tatum based his belief on prior contacts with Mr. Perez. Officer Tatum also believed that Mr. Perez had a gun because people who sell drugs often have guns.

Officer Rodriguez did not believe that Mr. Perez had committed a crime of violence, and Officer Rodriguez did not review Mr. Perez's file before the search.

4

Officers Rodriguez and Tatum gave no explanation for the decision to search Mr. Perez's home on that specific date, November 4, 2014.

Officer Snodgrass had no specific knowledge of Mr. Perez but was included in the probation search on November 4, 2014.

### Plan to Search on November 4, 2014

The plan was for Officers Rodriguez and Snodgrass to go to the front of the house and for Officer Tatum to watch the house to make sure that Mr. Perez did not escape from another exit. The original plan was *not* for Officer Tatum to enter the house through the back door. The original plan was *not* for Officer Tatum to enter the house with his gun drawn.

### Officers' Belief that Mr. Perez Was Physically Present at Home

The officers knew that Plaintiffs' home was the address Mr. Perez listed as his residence. Plaintiffs agree that their home was the "correct address" for Mr. Perez. Mr. Perez kept his belongings at the home but did not spend every day there.

The officers parked down the street after seeing that a car that Mr. Perez usually drove was parked at Plaintiffs' house. Officer Tatum believed that Mr. Perez was in the house because his car was parked outside on the corner near the house.

### Actions at Front Door

Officers Rodriquez and Snodgrass went to the front door and knocked, and Plaintiffs answered the door. Raul Barajas asked the officers to see a "paper." Officer Rodriguez understood that he was asking for a search warrant. Officer Rodriguez explained to Raul Barajas that did not have a search warrant, but that he did not need one to enter the house and search because Mr. Perez was on probation with a search condition.

Officer Snodgrass did not speak with Raul Barajas when he answered the door but confirmed that Officer Rodriquez informed Raul Barajas they were there to do a probation search and that there was a dialogue about a search warrant. Raul Barajas told the officers that Mr. Perez was not present in the house.

### Officer Tatum's Actions

While Officers Rodriguez and Snodgrass went to the front door, Officer Tatum went

5

through the side gate and entered Plaintiffs' home through a rear sliding door.  Officer Tatum entered the home with his gun drawn – out of his holster and in his hand – while the two other officers were still outside the front door, speaking with the family.  Officer Tatum holstered his gun when he heard the conversation, and no one saw Officer Tatum with his gun drawn.  Plaintiffs learned of that Officer Tatum had drawn his gun only after they filed this litigation.

Officer Tatum entered the house *before* he knew if Officers Rodriguez and Snodgrass had contacted the residents of the home.  Although Officer Tatum testified to the opposite, the Court does not find Officer Tatum's testimony on this subject to be credible.  Officer Tatum testified that he could hear Officers Snodgrass and Rodriquez talking with Plaintiffs.  Officer Tatum testified that, after he heard Officer Snodgrass say that he was out with somebody in front, Officer Tatum responded on his radio: "Copy, entering through the back."  Officer Snodgrass does not recall having any communication via the radio with Officer Tatum at Plaintiffs' residence on November 14, 2014, and a log of the radio communications did not show evidence of a communication between Officers Snodgrass and Tatum.

Officer Tatum then entered the home into the area behind Plaintiffs, who were still standing near the front door and talking with Officer Rodriguez.  Plaintiffs then saw Officer Tatum and realized that he was already in the house.

### Plaintiffs' Opening the Door

Only after Plaintiffs saw Officer Tatum behind them inside their house did they open the door for Officers Rodriguez and Snodgrass.  Plaintiffs did not consent to Officer Tatum's entry through the rear of the house but opened the door because it was meaningless to keep Officers Rodriguez and Snodgrass outside the house when Officer Tatum was already in the house.

### Officers' Search

Officers Rodriguez and Snodgrass searched the house while Officer Tatum stayed with Plaintiffs and Lorena Barajas.[4]  Officers Rodriguez and Snodgrass then searched each room in the house cursorily to see if Mr. Perez was hiding.  Officers Rodriguez and Snodgrass searched each bedroom.  Plaintiffs described their bedroom as a personal space for them alone.

---

[4] Plaintiffs' other son, Rene Barajas, was not present at the house on November 4, 2014.

Plaintiffs described the search as polite and professional. Plaintiffs described the search as "real fast."

Officers Rodriguez and Snodgrass searched only to see if Mr. Perez was hiding in the house and did not open any drawers and only looked in closets to see if Mr. Perez was hiding in the closet. Officers Rodriguez and Snodgrass did not find Mr. Perez in the house.

### Length of Search and Result

The entire incident, from arrival of the officers to their departure after the search, lasted 18 minutes. No one was injured, assaulted, or arrested.

### Actions or Lack of Action after Incident

Afterwards, the Barajas family went to the Rohnert Park Police Station to complain about the November 4, 2014, search of their home. A sergeant told Officer Snodgrass that the family had come to the police department to complain about the search of their home. Officer Snodgrass told the sergeant they had conducted a probation search, and the sergeant did not ask him anything further about what had happened. No one has given Officers Tatum and Snodgrass any guidance on different actions they could have taken with respect to the search of Plaintiffs' home, and no one has told Officer Rodriguez that he did anything incorrectly with respect to the search. Additionally, no one has told Officers Tatum and Snodgrass that they violated policy or protocol in connection with their search.

Officer Tatum told two of his supervisors, Commanders Strouse and Taylor, about his entry in Plaintiffs' home and the manner of his entry, and they did not give any guidance on a different way to conduct a probation search. No one told him that it was a mistake for him to enter the back of the house while officers were at the front talking to the occupants, and no one told him that it was a mistake to enter with his gun drawn. Officer Tatum has entered through a rear door during probation searches 50-60 times. Officer Snodgrass testified he did not report anything to his supervisors about Officer Tatum's entry because he believed that an officer's entry through the back before other officers entered through the front is the Rohnert Park Police Department's practice. Entry through the rear of the house is the practice of the Rohnert Park Police Department.

Since the November 2014 incident, no additional training has been offered and, since the search of the Plaintiffs' home, nothing has changed with respect to how the Rohnert Park Police Department conducts probation searches.

### Training and Policy

Sergeant Jeff Justice was designated as the witness for the City of Rohnert Park to testify regarding training and practices pertaining to probation searches. Sergeant Justice testified that he has trained officers in the City of Rohnert Park to conduct probation searches such that, if there is a search condition as part of probation, the officer may enter the house even if the officer does not know if the officers at the front have made contact with the occupants and even if there are no exigent circumstances.[5]

The City of Rohnert Park did not have at the time of the incident, and still does not have, a specific team of officers who conduct probation searches. Rohnert Park has no written policy about probation searches. There is no "rule" or "policy" about probation searches. There is an annual training for police officers regarding an update on probation searches. The City of Rohnert Park has trained its officers to believe that they can search a home at any time of the day, based on search conditions. There is no specific training about how to conduct probation searches of a residence. Chief Brian Masterson testified that, if the same facts occurred as in this scenario, he would approve the search in the same manner.

The officers' entry into Plaintiffs' home, even over their objection, was consistent with and authorized by the standard search practices in Rohnert Park. Officers for Rohnert Park are told that they do not need reasonable suspicion to search a probationer's home if the probationer has a search condition.

### Officers' Understanding of Law

Officer Rodriguez believes that he was entitled to enter a home even if the co-occupant was not accused of a crime, when there were no exigent circumstances, and when the co-occupant refused entry. No one at the Rohnert Park Police Department told Officer Rodriguez that he

---

[5] Although Sergeants Justice gave a slightly more nuanced answer at trial – stating that "typically" the officers attempted to make contact with the residents of a home before the search, his previous testimony in deposition was clear and unequivocal.

should consider the underlying offense leading to the probation or whether the probationer has been accused of committing a new crime before he conducts a probation search. Officer Rodriguez confirmed that he searches all rooms of the house.

Rohnert Park also trained Officer Snodgrass to search all the rooms of a home in a probation search. Officer Snodgrass has never had a class "specifically covering how to conduct a probation search."

Officer Tatum believed that it was consistent with his training for him to enter the house from the back even if he did not know if the officers at the front door had made contact with the occupants of the house.

**CONCLUSIONS OF LAW**

Officer Tatum's manner of entry into Plaintiffs' home violated the U.S. Constitution in two main respects. *Georgia v. Randolph*, 547 U.S. 103 (2008); *United States v. Knights,* 534 U.S. 112 (2001). First, Officer Tatum's entry into Plaintiffs home during a probation search, before the co-occupants here, Plaintiffs Raul and Elva Barajas, had a chance to consent, violated the Fourth Amendment to the U.S. Constitution. There were no exigent circumstances that allowed him to enter Plaintiffs' home without giving them a chance to consent or decline entry, and there was no probable cause that the probationer had committed a violent crime. One of the reasons that officers must knock and attempt to contact the residents before entering secretly through the rear of a home is for the officers to assess the situation and determine who is present. Given that a probationer might live with co-habitants in a home, absent exigent circumstances, officers must be able to determine who is present and who gives consent to entry, and which parts of the home belong to the probationer.

Second, Officer Tatum's entry into Plaintiffs' home during a probation search, with his gun drawn, based on a fabricated story that a confidential informant had told him that Mr. Perez had a gun, and where there were no exigent circumstances, violated the Fourth Amendment to the Constitution.

Additionally, Officers Rodriguez and Snodgrass violated the Fourth Amendment to the U.S. Constitution by searching all areas of Plaintiffs' home without even attempting to determine

whether Mr. Perez resided in certain rooms or if Mr. Perez had joint control over certain areas, because there were no exigent circumstances and because they did not have a reasonable suspicion that Mr. Perez had committed a violent crime. If there is a search condition that allows a search of a home, police officers may search all portions of the home where the probationer has the mutual use of the property, generally having joint access or control for most purposes, or areas of the house over which police officers reasonably believe the probationer has complete or joint control.[6]

Here, Officers Rodriguez and Snodgrass violated the Fourth Amendment by searching the entire home without even attempting to determine Mr. Perez's use or control over the spaces or rooms in the home.

When law enforcement officers have probable cause that the probationer committed a violent felony, when law enforcement officers have probable cause to believe that the probationer resides at the home searched, and when the probationer is on probation for a violent felony, law enforcement officers can search the home over the objection of the co-habitant. *Smith v. City of Santa Clara*, 876 F.3d 987 (9th Cir. 2017). However, in the type of situation in this case (probation search over objection of co-habitant without prior conviction of violent felony and no probable cause of current violent felony), law enforcement officers must use the totality of the circumstances test to determine if the search is appropriate. *Georgia v. Randolph*, 547 U.S. 103 (2008); *United States v. Knights,* 534 U.S. 112 (2001). In this type of situation, law enforcement officers must consider the "totality of the circumstances," including the following factors, to determine if they can search the home:

(1) Whether the terms of probation allow the search;

(2) Whether the probationer lives at the home and whether the law enforcement officers have a good faith belief of that residence;

(3) Whether the co-habitants who object to the search have agreed to the search

---

[6] The Court in *United States v. Patterson* summarized the authority on this issue. 276 F.Supp. 3d. 994 (S.D. Cal. 2017) (citing *People v. Woods*, 21 Cal.4th 668, 681 (1999); *United States v. Matlock*, 415 U.S. 164, 170–71 (1974); *United States v. Eibeck*, 015 WL 894655, at *5 (S.D. Cal. Feb. 25, 2015); *Gutierrez v. County of L.A.*, 2013 WL 3821602, at *11–12 (C.D. Cal. July 22, 2013)).

    conditions or know of the search conditions or consented to the search in some manner;

(4) Whether the law enforcement officers believe that the probationer is violating the terms of his or her probation;

(5) Whether exigent circumstances exist for the search.

The policy of the City of Rohnert Park in allowing law enforcement officers to search a home, even with a search condition of probation, over the objection of a co-habitant, without considering the totality of circumstances described above, violates the Fourth Amendment to the U.S. Constitution.

## PROCEDURAL HISTORY

Plaintiffs filed suit on November 21, 2014. (Dkt. 1.) The Court granted in part and denied in part motions for summary judgment and at one point certified a question for appeal. (Dkts. 59, 86.) After a long delay and a refusal by the appellate court to address the certified issue, the Court addressed summary judgment motions but allowed some claims to go forward. (Dkts. 92-1, 99, 120.) This matter went to jury trial on October 23, 2018, with the following causes of action: violation of 42 U.S.C. § 1983 for violating the Fourth Amendment of the U.S. Constitution, violation of the California Constitution for an unreasonable search and invasion of privacy, and negligence under California law. (Dkt. 251.) On November 1, 2018, the jury returned a verdict as follows: (1) Officers Rodriguez, Snodgrass and Tatum violated Plaintiffs' Fourth Amendment right and California Constitution's right against unreasonable search because their search was unreasonable, (2) Officer Tatum's manner of entry was unreasonable, (3) the City of Rohnert Park was liable for violating Plaintiff's Fourth Amendment rights, (4) the primary purpose of the search was not for harassment, (5) only Officer Tatum violated Plaintiffs' right to privacy under the California Constitution, (6) only Officer Tatum was negligent in his search of Plaintiffs' home. (Dkt. 266.) The jury awarded Elva Barajas $50,000 in damages and Raul Barajas $25,000 in damages. (Dkt. 266.)

## ANALYSIS

**A. Applicable Legal Standards for Injunctive Relief.**

11

1   "According to well-established principles of equity," Plaintiffs bear the burden of showing
2   that they are entitled to a permanent injunction by demonstrating: "(1) that [they have] suffered an
3   irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to
4   compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and
5   defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved
6   by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In the
7   context of a claim for violation of 42 U.S.C. § 1983, the Court can order training regarding
8   practices for searching. *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015).

## B.   Standing for Injunctive Relief.

To have standing to seek injunctive relief, a plaintiff must demonstrate a likelihood of repeated injury or future harm to the plaintiff in the absence of the injunction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1982); *see also B.C. v. Plumas Unified Sch. Dist.,* 192 F.3d 1260, 1264 (9th Cir. 1999) ("To have standing to seek relief, [the plaintiff] must demonstrate a real or immediate threat that the defendants will again subject him to [another illegal search].").

> The question then is whether the practices to which appellants object are capable of repetition *as to them.* Where no class action has been instituted, the capable of repetition doctrine is applied only in exceptional situations where the plaintiff can reasonably show that *he* will again be subject to the same injury.

*Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (emphasis in original). "Standing is determined by the facts that exist at the time the complaint is filed." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).

Here, the concern is that Plaintiffs, who are not acting on behalf of a class of similarly-situated plaintiffs, may not be able to show the risk of repeated injury or harm. Mr. Perez is currently not on probation, and his last term of probation ended May 2, 2016. However, Mr. Perez was on probation at the time that Plaintiffs filed their complaint on November 21, 2014. Moreover, as Defendants pointed out at trial and as noted above, Mr. Perez has a long history of problems with breaking the law. Plaintiffs have never evicted Mr. Perez from their home, and Plaintiffs' home remains Mr. Perez's only real home. It was highly likely that Defendants would

search his home again at the time Plaintiffs filed their complaint on November 21, 2014. In addition, even though Mr. Perez is not currently on probation, it is highly likely that he will commit another crime and will again be placed on probation with a search condition and that Defendants will search Plaintiffs' home again.

Under these circumstances, the Court finds that Plaintiffs have standing to pursue injunctive relief.

**C.    Plaintiff's Requested Injunction.**

Plaintiffs seek an injunction as follows:

(1)    That the City of Rohnert Park adopt a written policy that provides guidance to its police officers regarding probation searches;

(2)    That the City of Rohnert Park provide at least three hours of training to each police officer who might participate in a probation search, and that the training include a discussion of the facts of the case and the order the Court adopts;

(3)    That, where there is no exigency and no reasonable suspicion that the probationer has committed a new crime, officers shall not enter the home from a rear door during a probation search until and unless the officers at the front door have fully complied with state and federal "knock and notice" requirements;

(4)    That, when conducting a probation search, the search should generally be limited to areas of the residence over which the probationer is believed to have joint or complete authority unless there are exigent circumstances or a reasonable suspicion that the probationer has committed a new crime;

(5)    That, if there are no exigent circumstances or no reasonable suspicion that the probationer has committed a new crime, an officer cannot conduct a probation search when no one is present.

**D.    Injunctive Relief.**

The Court finds that there are systemic problems in the way that the City of Rohnert Park fails to train its police officers. Therefore, the Court ORDERS the City of Rohnert Park to provide training before December 31, 2019 for all officers currently on duty regarding this Order and the

13

law set forth in this Order.  The City of Rohnert Park must provide the officers with a copy of this Order.  The training must last at least two hours.  All new officers who join the City of Rohnert Park Police Department must also receive this training by the end of the year in which they join the City of Rohnert Park Police Department.

The Court ORDERS the City of Rohnert Park to develop and provide to each officer a written policy regarding probation searches, before December 31, 2019.  Ideally, the City of Rohnert Park will provide this written policy at the training sessions, but the City of Rohnert Park is not required to do so.

The Court declines to issue Plaintiffs' third and fourth requests to ban of entry of a home from a rear door during a probation search and to ban searches of all rooms unless there are exigent circumstances or a reasonable suspicion of a new violent crime.  The Court finds that training the officers on this standard is sufficient to ensure that officers will not make the same error in the future with regard to Plaintiffs.

The Court rejects Plaintiffs' fifth request for a ban on probation searches when no one is physically present in the home.  There is no evidence in the record that Plaintiffs are at risk for a probation search conducted when they are not physically present in the home, because that fact pattern did not arise.

**IT IS SO ORDERED**.

Dated: January 16, 2019

_____
SALLIE KIM
United States Magistrate Judge